Hillsborough-northern judicial district
No. 92-579

## First NH Bank

v.

## Town of Windham

March 22, 1994

*Sheehan Phinney Bass + Green, P.A.*, of Manchester (*Bruce A. Harwood* and *F. Anne Ross* on the brief, and *Mr. Harwood* orally), for the plaintiff.

*Beaumont, Mason & Campbell, P.A.*, of Salem (*Bernard H. Campbell* on the brief and orally), for the defendant.

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*Anne G. Sheer & a.* on the brief), by brief for New Hampshire Bankers Association, as *amicus curiae*.

*H. Bernard Waugh, Jr.,* of Concord, by brief for New Hampshire Municipal Association, as *amicus curiae.*

JOHNSON, J. The plaintiff, First NH Bank (the bank), appeals from orders of the Superior Court (*Groff,* J.) granting summary judgment in favor of the defendant, Town of Windham (the town), and upholding the town's acquisition of a delinquent taxpayer's land, free and clear of the bank's interest as mortgagee of the taxpayer. We consider the following: (1) whether real estate tax liens have priority over antecedent mortgages; (2) whether tax deeds issued in foreclosure of the equity of redemption existing under such liens (tax lien deeds), RSA 80:76 (1991), extinguish such mortgages; and (3) whether mortgagees must receive notice of the deeding of tax liens as a matter of statutory construction and due process. We reverse because the bank as mortgagee did not receive notice of the extermination of its rights in the property prior to the issuance of deeds.

On April 1, 1988, Torrisi Construction Co. (Torrisi) owned four lots in Windham that the town assessed for property taxes. The bank held a mortgage on each lot, securing approximately $1.4 million of debt.

Torrisi failed to pay taxes on the four lots following the April 1988 assessment. Applying the alternate tax lien procedure, *see* RSA 80:20-a (1991), the town tax collector executed liens on all four lots on April 13, 1989. The tax collector testified that she notified the bank of the existence of tax liens in accordance with RSA 80:65 (Supp. 1993). This was the only notice of the tax collection process that the town provided the bank before issuing tax lien deeds two years later.

Because no payments were made to redeem the property from the liens, the tax collector issued deeds for the lots to the town on April 19, 1991. After the town notified the bank that it held title, the bank immediately offered to pay all tax arrearages in exchange for reconveyance of the lots. The town declined the offer. The assessed value of the properties exceeded $1 million, while the amount of unpaid taxes was approximately $60,000.

In July 1991, the bank filed a petition seeking a judgment that its mortgages had priority over the tax liens, and that the lots remained encumbered by the mortgages. An amended petition alleged, among other things: (1) that the town, by notifying the bank of the tax liens, but not of the impending conveyances of tax lien deeds, had not complied with the statutory requirement that current owners receive notice prior to such deeding; (2) that the failure to provide notice violated the bank's right to due process; and (3) that the conveyance of tax lien deeds was fraudulent.

In November 1991, the trial court ruled on a motion for summary judgment that the tax liens had priority over the bank's mortgages. The parties agreed to auction the four properties and to place in escrow any funds exceeding the tax arrearages and costs, and in May 1992 the trial court consented to this arrangement.

In June 1992, the bank moved to add a claim that the town's retention of the value of the properties in excess of the amount of unpaid taxes was a taking. The trial court denied the motion but ruled, on a motion for summary judgment, that the tax collection procedure complied with RSA chapter 80 and the due process clauses of the State and Federal Constitutions. The bank's motions for reconsideration and clarification were denied.

The amount currently in escrow from the auction of the four lots is approximately $640,000. On appeal, the bank asserts a right to the escrowed funds on account of the following: the priority of its mortgages; the failure of the tax lien deeds to extinguish its mortgages; the town's violation of the statutory and constitutional requirements of notice; and the fraudulent conveyance of the properties by the tax lien deeds. The bank also argues that the town's retention of the value of the real estate in excess of its unpaid taxes and costs violates the purpose of the tax collection statute and constitutes a taking, and that the trial court erred by denying the bank's motion to amend its petition.

## I. Priority of Tax Liens Over Mortgages

The first issue is whether the tax liens have priority over the mortgages. We hold that liens for taxes are superior encumbrances.

Local property taxes exact a ratable portion of the value of real estate to support the functions of government. See H. BLACK, A TREATISE ON THE LAW OF TAX TITLES § 2 (2d ed. 1893). This tax falls not on the landowner's equity in the land, but on the real estate itself. See RSA 72:6 (1991); RSA 80:19 (Supp. 1993) (amended to provide that all liens imposed in accordance with this chapter shall have priority over all other liens); see Eastman v. Thayer, 60 N.H. 408, 418 (1880).

In April of each year, a lien arises by force of law to secure the payment of property taxes for that year; all real estate becomes "holden for all taxes thereon." RSA 80:19; see also RSA 76:2 (1991); Allen v. Bemis, 99 N.H. 247, 108 A.2d 549 (1954). No judicial intervention is necessary for the town to realize wealth from the land subject to this automatic lien. See BLACK, supra § 189. Instead, there are two statutory mechanisms for converting the automatic

lien into an equitable property interest by tax sale on a perfected statutory lien under the lien procedure: the tax sale and the alternate tax lien procedure. In either event the procedure applies to the real estate itself without regard to other liens.

The town in this case employed the alternate tax lien procedure. *See* P. LOUGHLIN, 2 NEW HAMPSHIRE MUNICIPAL PRACTICE SERIES, MUNICIPAL FINANCE AND TAXATION § 13:29 (1990). The alternate tax lien process requires a tax collector to execute a tax lien, which is a lien on "a 100 percent common and undivided interest in the property," RSA 80:61 (1991), if the taxes remain unpaid on December 1 following their assessment. *See* RSA 80:59 (Supp. 1993). Only a town, a county, or the State may hold this lien on the real estate already "holden for all taxes" by the automatic lien. RSA 80:63 (Supp. 1993). Any person holding an interest in land subject to the alternate tax lien procedure may redeem the property by paying the tax collector all outstanding taxes, costs, and interest. RSA 80:69 (Supp. 1993). This right of redemption expires when, after two years from the execution of the lien, the tax collector issues a deed to the town, the county, or the State, as lienholder. RSA 80:76. A tax sale, in contrast, is a public auction of the smallest percentage interest in the property that a bidder is willing to buy to satisfy the unpaid taxes, interest, and costs. *See* RSA 80:24 (1991); *Opinion of the Justices*, 131 N.H. 644, 651–52, 557 A.2d 1364, 1369–70 (1989); W. HOWES, TAX COLLECTING IN NEW HAMPSHIRE 187 (1941).

 The bank asserts that its mortgages are superior because they were recorded before the tax collector executed the tax liens to the town. We disagree. A real estate tax lien is superior to a mortgage because in this State it has been "the consistent assumption and practice by mortgagees and tax collectors, and the notice provisions of the tax statutes give[ ] it that effect." *United States v. Town of Marlborough, New Hampshire*, 305 F. Supp. 718, 722 (D.N.H. 1969). The lien, like the property tax obligation itself, attaches to the land, not to the landowner's equity. RSA 80:19; *see also* RSA 72:6; *Morrison v. Manchester*, 58 N.H. 538, 557–59 (1879).

According to the bank, a statutory lien, such as a tax lien, is subordinate to an antecedent mortgage unless the State Legislature indicates otherwise. Even if we were to accept that the priority of a tax lien must be established by statute, we would still conclude that tax liens are superior. Liens for taxes may be accorded primacy by an express statutory provision, or by implication. *See* BLACK, *supra* § 185, at 233. RSA chapter 80 provides that mortgagees shall receive notice following the execution of the tax lien, and mortgagees, as

parties interested in the property, may redeem the property by paying all taxes and charges prior to the issuance of a tax lien deed. RSA 80:65, :69. A tax lien and a tax lien deed are void as to any mortgagee not apprised of the execution of the lien, thus establishing priority for the mortgage. RSA 80:65. In addition, the statutory form of power of sale mortgages requires that the mortgagor pay "all taxes, charges and assessments for which the property mortgaged may become liable." RSA 477:29 (1992). These provisions would serve little purpose if tax liens did not take precedence over mortgages.

We infer that a mortgage is inferior to a tax lien so that we may give effect to the relevant language in every power of sale mortgage and in the statutes granting the mortgagee a right to notice of a tax lien and a right to redeem. *See Town of Marlborough, New Hampshire*, 305 F. Supp. at 722. Therefore, finding the superior rank of tax liens implied by statute and established by case law, we hold that the town's tax liens have priority over the bank's mortgages. *Cf.* Laws 1993, 125:1 (providing that tax liens take priority over other liens, thereby "ratif[ying] and codif[ying] existing case law and practice").

## II. Impact of Tax Lien Deeds on Mortgages

The next issue on appeal is whether the mortgages survived the issuance of the tax lien deeds. The bank argues that a tax lien deed conveys only that interest necessary for the collection of taxes and charges. Such a limited conveyance, according to the bank, allows other lienors to recover the value of their interests, less any taxes and charges, if the town ultimately sells the property that it acquired by tax lien deed.

In *Spurgias v. Morrissette*, 109 N.H. 275, 249 A.2d 685 (1969), we rejected a claim analogous to the bank's. The taxpayer in *Spurgias*, divested of his property by a tax sale and a collector's deed, sought to recover the value of the property exceeding the unpaid taxes, charges, and fees. *Id.* at 276, 249 A.2d at 686. We concluded that any right of the taxpayer to the surplus of proceeds resulting from the tax sale ended when the issuance of the tax deed terminated the right of redemption. *Id.* at 278, 249 A.2d at 688.

Our conclusion in *Spurgias* that the issuance of the deed annihilates the previous owner's interest in the property comports with an analysis of the statute, and with earlier decisions of this court. The statute authorizing the issuance of tax lien deeds indicates that the deed is for the "land subject to the real estate tax lien." RSA 80:76. The lienholder takes a "100 percent common and undivided interest in the property" upon execution of the lien, RSA 80:61, and

this interest matures into a tax title upon the termination of the right of redemption and the execution of the tax deed. RSA 80:76. Consistent with the construction that the tax lien is superior because it attaches to the land itself, we have noted that the tax title derived from this lien "breaks up all previous titles." *See Eastman*, 60 N.H. at 418. In other words, a new and independent title to one hundred percent of the land charged for unpaid taxes is the ultimate product of the alternate tax lien procedure. *See* BLACK, *supra* § 420, at 529–30; *see also Smith v. Messer*, 17 N.H. 420, 428 (1845). A mortgage does not encumber the tax title created by RSA 80:76. The mortgagee's interest in the property ends upon the issuance of the tax lien deeds when the right of redemption expires, *cf. Spurgias*, 109 N.H. at 278, 249 A.2d at 688, because previous encumbrances are thereby divested. *See Eastman*, 60 N.H. at 418; BLACK, *supra* §§ 420, 425, at 529–30, 535–36. Therefore, we reject the bank's argument that mortgages recorded on a taxpayer's property survive the issuance of tax lien deeds.

*III. Right of a Mortgage Holder Where Notice Not Adequate*

We agree, however, that a mortgage will survive tax deeds if the town fails to provide all the notice the law requires. *See White v. Lee*, 124 N.H. 69, 75–76, 470 A.2d 849, 853 (1983). Pursuant to RSA 80:60 (1991) and :65, the town notified the landowner and the bank that tax liens had been executed, and pursuant to RSA 80:77 (1991), the town notified the landowner before the tax deeds were issued. The bank, however, was not sent express notice of the issuance of the tax deeds.

The bank first argues that, like the taxpayer, it was entitled to notice of the tax lien deed under RSA 80:77. RSA 80:77 provides for actual notice of tax lien deeds to every "current owner" thirty days before the deeds are executed. The issue, then, is whether the bank is a "current owner" within the meaning of the statute. We hold that it is not. We believe that the legislature did not consider mortgagees to be "current owners." We are led to this conclusion by comparing RSA 80:60 and :65, which deal with notice of the tax lien. RSA 80:60 provides that such notice must be given to the "current owner"; RSA 80:65 provides that such notice must also be given to mortgagees. Had the legislature intended mortgagees to be regarded as "current owners," it would not have needed to enact 80:65. Similarly, had the legislature intended there to be notice of a tax deeding to both owners and mortgagees, we believe it would have so provided in express terms.

The bank also argues that it was entitled to notice of tax lien deeds as a matter of due process under the State and Federal Constitutions. Consistent with *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), we first consider the due process requirements of part I, article 15 of the New Hampshire Constitution, and refer to cases under the fourteenth amendment of the United States Constitution only to aid our analysis.

The parties in this case concentrate much of their efforts arguing that the following cases should be applied or distinguished: *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983); *White v. Lee*, 124 N.H. 69, 470 A.2d 849 (1983); and *Kakris v. Montbleau*, 133 N.H. 166, 575 A.2d 1293 (1990). Because we agree that disposition of this case must take account of those cases, we briefly set forth their facts and holdings.

In *Mennonite*, a mortgagee's recorded lien on real property had been extinguished under Indiana law by virtue of a tax sale and expiration of the redemption period. The mortgagee sued the current owner, arguing that its rights to due process had been violated because (1) it had not received constitutionally adequate notice of the pending tax sale, and (2) it had not received notice of the opportunity to redeem the property following the tax sale. *Mennonite*, 462 U.S. at 795. The Indiana courts upheld the statutory notice. The Supreme Court reversed, holding that due process required actual notice of the tax sale to the known mortgagee, but expressly stated that it was not deciding the issue of whether the mortgagee was also entitled to actual notice of its right to redeem the property. *Id.* at 800 n.6. The *Mennonite* Court explained that the case was controlled by the principle announced in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), that "prior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mennonite*, 462 U.S. at 795 (quotation omitted). Finding that the mortgage was a "substantial property" interest and noting that Indiana tax sales "significantly affected" mortgages, the Court held that the bank enjoyed a due process right to receive actual notice of the tax sale. *Id.* at 798.

In *White v. Lee*, the plaintiffs had acquired the property in question after the April 1 tax assessment date. After the conveyance, the town sent a tax bill to the prior owner who was the owner of record as of April 1. The taxes were not paid, and the town held a tax sale.

Notice of the tax sale was sent only to the prior owner. Two years later, and again without notice to the current owner, the property was conveyed by a tax deed. On an interlocutory transfer, we were asked, *inter alia*, whether the notice comported with due process. We explained that whether or not statutorily required, a town is constitutionally required to provide actual notice of a tax sale to such known current owners. *White*, 124 N.H. at 77, 470 A.2d at 854.

Finally, in *Kakris v. Montbleau*, we considered whether due process requires notice to an owner before the issuance of a tax deed. Due to an error in town records, a twenty-acre parcel owned by Kakris disappeared from the tax rolls of the town. Twenty years later, after a town tax map was completed, the parcel reappeared on the tax rolls, but, despite reasonable efforts, the town was unable to determine the owner. Accordingly, the land was taxed to "owner unknown." When the taxes were not paid, a tax sale was held and two years later, a tax deed was issued. Notice of these events was again only sent to "owner unknown." Kakris challenged the tax deed, arguing in part that due process required the town to give her actual notice of the tax deeding and that the town's notice to "owner unknown" was insufficient. We explained that while due process and RSA 80:38-a (1991) would require actual notice to a *known* owner before tax deeding, the failure to give Kakris actual notice was not a violation of due process because her identity remained unknown despite reasonable efforts on the part of the town. *Kakris*, 133 N.H. at 176, 575 A.2d at 1299.

The constitutional question we must address here is one that was not *expressly* reached in *Mennonite*, *White*, or *Kakris*: whether due process requires actual notice to a mortgagee of record of not only a tax sale, but also a tax deeding. The town contends that it does not. We disagree and hold that the due process provisions of the New Hampshire Constitution require that a mortgagee receive actual notice of its right to redeem and the consequences of not doing so.

While neither *Mennonite*, *White*, nor *Kakris* dealt with the constitutional requirement of notice to a mortgagee before tax deeding, the due process concerns articulated in those cases are equally forceful with respect to the issue presently before us. Once it is determined that there is a protected property interest, the due process inquiry, reduced to its core, is one of "fundamental fairness." A core requirement of fundamental fairness is that "prior to an action which will affect an interest in life, liberty or property, . . . a State must provide [actual notice to known interested parties]." *Mennonite*, 462 U.S. at 795. *Mennonite*, *White*, and *Kakris*, then, simply represent

applications of the requirement of fundamental fairness to particular situations.

In this light, we conclude that for the same reasons that fundamental fairness requires actual notice of a tax sale to known owners and mortgagees, and actual notice of a tax deeding to known owners, it also requires actual notice of a tax deeding to known mortgagees, as in this case. First, we do not see how due process can be read, as in *Mennonite*, to require actual notice to a known mortgagee of a tax sale, but not to require notice, as here, of a tax deeding. We reach this conclusion by comparing the relative effects on interested parties of these two events. In New Hampshire, the significance to interested parties of a tax sale or the execution of a tax lien is primarily to determine who will hold the priority lien on the property for the payment of taxes. Once a tax sale has been held or a tax lien has been executed, the property owner, or holder of an interest such as a mortgagee, is required to pay a statutorily set interest rate to the holder of the lien. For two years, the redemption period, this remains the status of the parties. The end of the redemption period, however, is an event that has far greater significance to both the owner and the mortgagee. When the redemption period lapses, the holder of the lien is entitled to exchange the lien for a tax deed, thereby acquiring the property free and clear of all other interests. *See* RSA 80:59–:76. Unlike following the execution of the tax lien, there is nothing any interested party can do after the property is conveyed by tax deed. Second, we do not see how due process can be read, as *Kakris* suggests, to require actual notice of a tax deeding to a known owner, but not require notice in this case to a known mortgagee. Although not expressly stated in *Kakris*, the requirement announced in that case that known owners must receive notice of a tax deeding was based primarily on the fact that tax deeding irreversibly deprives the owner of any equity in the property. Considering that tax deeding extinguishes valuable mortgage interests just as it extinguishes valuable equity interests, the same fairness concerns arise as to the mortgagee.

In sum, the end of the redemption period and the execution of a tax deed have much greater significance to interested parties than does the occurrence of a tax sale. Since we have already recognized that a known owner is entitled to actual notice of a tax deeding, we cannot hold that a known mortgagee is constitutionally entitled to actual notice of a tax sale but not notice of a tax deeding. Accordingly, we hold that fundamental fairness under the New Hampshire Constitution requires notice to the mortgagee of the following: the

issue date of the tax lien deeds; the expiration date of the right of redemption; and a warning that the mortgage will be eradicated by the tax lien deed if the property is not redeemed.

■ Because the town did not provide the bank all the notice required by the due process requirements of the New Hampshire Constitution, we hold that the tax lien deeds did not extinguish all of the bank's interest in the property. Although the bank's right to notice prior to the delivery of tax lien deeds is a constitutional mandate rather than an express statutory requirement, we do not hold that the alternate tax lien procedures are invalid. When these statutory procedures are read in conjunction with a requirement that reasonably ascertainable mortgagees receive notice prior to the issuance of tax lien deeds, they are not unconstitutional. *See White*, 124 N.H. at 78, 470 A.2d at 854.

The application of the rule announced in this case shall apply to the parties hereto and to any similar cases pending but not concluded, but shall not be retroactively applied. *See Opinion of the Justices*, 131 N.H. at 649–51, 557 A.2d at 1368–69; *Hampton Nat'l Bank v. Desjardins*, 114 N.H. 68, 314 A.2d 654 (1974); *see also Harper v. Virginia Dept. of Taxation*, 113 S. Ct. 2510 (1993).

We need not address the remaining arguments on appeal. If there had not been a stipulation between the parties that any funds remaining after the auction of the four properties which exceeded tax arrearages and costs be placed in escrow, then the bank would still have a viable mortgage due to the lack of notice. Since there was such a stipulation between the parties, however, our holding is limited to the bank's interest in the escrowed funds. We reverse and remand for proceedings consistent with this opinion.

*Reversed and remanded.*

HORTON, J., with whom THAYER, J., joined, concurred specially; the others concurred.

HORTON, J., concurring specially: The majority mandates the award of the escrowed funds to the plaintiff bank. It bases this holding on the absence of constitutionally adequate notice to the plaintiff bank of the termination of the right of redemption and of the impending tax lien deed. The majority requires notice to mortgagees beyond the notice of the execution of the tax lien required by RSA 80:65. Such statutory notice was provided in this case. The expanded notice requirement is effective for the parties in this case, for parties in other pending cases, and, presumably, for parties in cases yet to

arise based on defective notice hereafter given. I agree that the plaintiff bank is entitled to the escrowed funds but am unable to agree with the path to this result.

I would find the statutory notice adequate. The mortgagee is afforded notice of the existence of the tax lien within forty-five days of its execution. RSA 80:65 (1991). Any subsequent mortgagee is given notice of the existence of the tax lien by virtue of the mandatory recording. RSA 80:64. The statutory scheme envisions that the lien be held by the taxing authority, RSA 80:63, that the lien be held subject to the right of redemption, RSA 80:69, and that this right of redemption exist for two years, after which time the right may be terminated by a deed to the lienholder of the land subject to the lien. RSA 80:76. Although notice of the pending deeding must be given to the current owner, RSA 80:77, no similar notice is required to be given to the mortgagee. Such mortgagee notice might be desirable, but its absence is not fundamentally unfair or unconstitutional. The mortgagee is clearly notified that taxes have not been paid and that a lien has been executed. This is notice that a statutory procedure of tax collection enforcement is underway and the mortgagee is subject to the results of that procedure.

The notice and fairness language in the cases cited by the majority all involve situations where the complaining party had *no* notice of the tax sale (the equivalent to this execution of the tax lien). These cases do not hold that two notices are required. In *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983), the issue related to a mortgagee who was found not to have received sufficient notice of a *tax sale* when notice was afforded by posting and publication. The Supreme Court did not reach the issue of second stage notice of the right of redemption prior to the tax deed execution. *Id.* at 800 n.6. *White v. Lee*, 124 N.H. 69, 470 A.2d 849 (1983), was a class action facial challenge to the constitutionality of the tax sale procedure and reached this court on transferred questions. The initiating plaintiffs had acquired the taxed property between the assessment date and the tax sale date and received *no* notice of the tax due, the tax sale, or the tax deeding. The transferred questions reached by this court were questions of general application, involving statutory and constitutional interpretation. This court found the tax sale procedure constitutional. The court noted, and relied on, the then-recently enacted statutory requirement that notice be given to the current owner of pending deeding. *Id.* at 77, 470 A.2d at 854. *Kakris v. Montbleau*, 133 N.H. 166, 575 A.2d 1293 (1990), also involved the issue of *no* notice to an owner and confirmed the practice of tax sales noticed to "owner

unknown" when the taxing authority, despite reasonable efforts, does not know the identity of the owner.

Although some language in these opinions may give comfort to a holding of constitutional defect, the results are hardly supportive of that position. Due process is notice of the pendency of the procedure in a manner calculated to permit interested parties to act. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Such notice was provided to the plaintiff bank. The majority would impose a duty of second stage notice, another reminder before the course of the statutory tax lien procedure reaches its final outcome. This is the precise issue reserved in *Mennonite*, and I would hold that it is not required by our constitution.

Charging the tax collectors of this State with this constitutional notice burden, over and above the statutory notice burden, also entails some practical problems that should be considered.

The first is the status of land titles subject to already existing notice defects. Property acquired by tax lien deed is often sold by the taxing authority to good faith purchasers who have relied on the tax lien statutes in judging the validity of the titles they have acquired. The majority says that we will not apply due process fairness retrospectively. Past impacted mortgagees, who have not yet complained of defective notice, will not be afforded fairness. This will avoid land title problems in those tax lien sales that have been held without challenge, but leaves us with constitutional abuses that will not be corrected. Further, to the extent other pending cases exist, there are bad titles in the marketplace that are burdened by the preserved mortgages.

Second, another trap for the unwary has been set. Presumably the legislature will amend RSA 80:77 to include notice of pending deeding to existing mortgagees, and the able municipal law advisers in this State will notify the many and varied tax collectors of the requirements imposed by our decision, but this is one more step that will imperil land titles in the future.

Third, we and the *Mennonite* court have been sensitive to the burden imposed on tax collectors. *See Mennonite*, 462 U.S. 791; *White*, 124 N.H. 69, 470 A.2d 849. The second stage notice proposed will not be accomplished merely by sending notice to the first stage mortgagee. Mortgages in today's economy are regularly transferred in financial markets. Transfers would not be uncommon in the approximately two-year period between first and second stage notice. To meet the burden of second stage notice, the tax collector must examine the registry of deeds for transfers.

Finally, the majority holds that the failure of this second stage notice will cause the mortgage to survive the tax deed. It avoids this consequence in this case by construing the stipulation on the escrowed funds as a waiver of the mortgage priority. In other cases, however, the tax lien deeds will extinguish the lien and substitute a tax title, subject to the mortgage. The mortgagee will have first claim to any proceeds from a sale to a subsequent purchaser, and the taxing authority must answer to any purchaser of the tax title, still encumbered by the mortgage, based on any warranties in that sale.

Although I would reject the plaintiff bank's claim of inadequate notice, I am impressed with its claim of taking without just compensation. The tax collection structure, in the light of the respective State and federal taking clauses, N.H. CONST., pt. I, art. 12; U.S. CONST., amend. V, should provide for collection of taxes, charges and any reasonable penalties, but avoid forfeiture. The tax *sale* procedure directly avoids the forfeiture problem by providing that a sufficient undivided interest in the taxed property be sold to satisfy the taxes due, together with charges. RSA 80:24; *see White v. Town of Wolfeboro*, 131 N.H. 1, 551 A.2d 514 (1988); Laws 1989, 402:1. The alternate tax lien procedure, enacted in 1987, states that the lien will be imposed on the entire taxed property. RSA 80:61. But what can be taken constitutionally under the lien? Is all of the liened property forfeitable in foreclosure of the lien, or only that part necessary to satisfy the obligation secured? A "lien" is defined as a charge or encumbrance on property to secure the payment of a debt or obligation. BLACK'S LAW DICTIONARY 922 (6th ed. 1990). The debt or obligation under the tax lien statutes is liquidated and easily determinable. Should we not hold that the tax lien deeding may only satisfy the lien and not provide for a fattening of the taxing authority's treasury? The right to property is a fundamental right under our constitution, and it is so specific that it limits all subsequent express grants of power. *Burrows v. City of Keene*, 121 N.H. 590, 596, 432 A.2d 15, 18 (1981). May the taxing power include an arbitrary forfeiture, a movement of property to the State without just compensation? I think not, and instead would subscribe to an interpretation of the tax lien enforcement provisions that would satisfy these constitutional objections by limiting recovery to the obligation secured by the lien. *White v. Lee*, 124 N.H. at 77–78, 470 A.2d at 854–55 (1983).

There is mixed authority on the constitutionality of statutory forfeiture in tax enforcement proceedings. The first, and weightiest, authority, since our consideration is under our State Constitution, is *Spurgias v. Morrissette*, 109 N.H. 275, 249 A.2d 685 (1969). This case

upheld our tax *sale* procedure and stated that the taxing town can keep the full proceeds without duty to account. It pointed out that the tax sale procedure is designed to collect only taxes. Since there was no evidence of lower undivided ownership bids, the incidental excess arising from a fair procedure did not trigger an accounting. *Spurgias* did not directly address the takings issue.

An analysis under the Federal Constitution exists in *Nelson v. New York City*, 352 U.S. 103 (1956). In *Nelson*, a takings claim by a property owner, who had incurred a substantial forfeiture under a New York tax lien foreclosure, was rejected by the Court. The basis for the holding was that the foreclosure procedure, although somewhat summary, permitted opportunity to recover the excess value over taxes by appropriate taxpayer action. The Court noted that the constitutional charge in *United States v. Lawton*, 110 U.S. 146, 150 (1884), "[t]o withhold the surplus from the owner would be to violate the Fifth Amendment to the Constitution and to deprive him of his property without due process of law," is dicta, since both the *Lawton* and the *Nelson* statutes do not "absolutely" preclude the owner from obtaining the surplus. *Nelson*, 352 U.S. at 110. Our neighbors in Maine have found no problem in the forfeiture of a large excess under a summary and automatic foreclosure procedure. *City of Auburn v. Mandarelli*, 320 A.2d 22 (Me. 1974). Vermont, on the other hand, confirms the sale against constitutional challenge, but requires accounting for the excess to preserve the statute under constitutional scrutiny. *Bogie v. Town of Barnet*, 129 Vt. 46, 270 A.2d 898 (1970).

Thus, I would find the notice adequate, but would hold that the statutory alternative tax lien procedure is constitutional only if it is read to provide for taking of the taxable property only to the extent of the lien. Following the tax lien deeding for a period not barred by laches, I would permit an interested party, owner, mortgagee, attaching creditor, mechanic's lien holder, or other party having rights in the deeded real estate to petition in equity for an accounting by the taxing authority and for the return, in priority and as equitable, of a sum equal to the excess of the land value, at the time of taking, over the amount of the taxes and charges accrued at taking. Such a construction, combined with the supplementary procedure, would permit the statutory procedure to withstand constitutional challenge and would provide for collection of taxes properly due and for the integrity of titles conveyed by tax lien deed.

On this basis, I agree with the remand.

THAYER, J., joins in the special concurrence.