NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2019-0339

RICHARD POLONSKY

v.

TOWN OF BEDFORD

Argued: February 13, 2020
Opinion Issued: April 24, 2020

Alfano Law Office, PLLC, of Concord (John F. Hayes on the brief and orally), for the plaintiff.

Upton & Hatfield, LLP, of Concord (Barton L. Mayer and Michael P. Courtney on the brief, and Mr. Mayer orally), for the defendant.

Beaumont & Campbell, Prof. Ass'n, of Salem (Bernard H. Campbell on the brief), for New Hampshire Tax Collectors' Association, as amicus curiae.

Stephen C. Buckley, of Concord, for New Hampshire Municipal Association, by brief, as amicus curiae.

New Hampshire Legal Assistance (Ruth Heintz and Steven Tower on the brief), as amicus curiae.

Pacific Legal Foundation, of Palm Beach Gardens, Florida (Christina Martin on the brief) and Bernstein, Shur, Sawyer & Nelson, P.A., of Concord (Ovide M. Lamontagne on the brief), for Pacific Legal Foundation, as amicus curiae.

DONOVAN, J.  The defendant, the Town of Bedford, appeals an order of the Superior Court (Nicolosi, J.): (1) ruling that the statutory scheme governing a municipality's obligations to compensate a former owner of property that the municipality has acquired by the execution of a tax deed violates Part I, Article 12 of the New Hampshire Constitution; and (2) awarding the plaintiff, Richard Polonsky, equitable relief.  See RSA 80:88-:91 (2012 & Supp. 2019).  We affirm because the termination of a municipality's duty to provide excess proceeds from a sale of property acquired by tax deed to a former owner three years after the recording date of the deed, see RSA 80:89, VII, allows the municipality to acquire property by tax deed without compensating the former owner for the value of the property that exceeds the amount owed to the municipality.

I. Factual and Procedural Background

The relevant factual and procedural background follows.  In 2008, the plaintiff inherited property in Bedford, which, according to the 2008 tax bill, was assessed at a value of $309,900. The plaintiff failed to pay his real estate taxes in 2008, 2009, and 2010. Consequently, tax liens were imposed on the property for each of those years. See RSA 80:59 (2012).  When the plaintiff failed to redeem the property by paying the amount of the liens and interest, see RSA 80:69 (2012), the town tax collector issued a tax deed conveying the property to the Town on May 31, 2011. See RSA 80:76, I (2012).  The Town recorded the deed on June 8, 2011.

The Town did not take any action regarding the property until April 4, 2013, when it contacted the plaintiff by telephone to advise him of the amount of back taxes, interest, costs, and penalties required to repurchase the property and of the Town's intention to sell the property by auction if he chose not to repurchase it. On June 12, the plaintiff offered to pay back taxes but requested that the Town waive the additional charges, citing ongoing medical problems that began in 2009. The Town requested financial and medical corroboration as it considered his request but received only his medical information. On July 17, the Town Council voted to reject the plaintiff's offer and begin the sale process.

2

Six months later, the Town formally noticed the plaintiff of its intent to sell the property. See RSA 80:89, I (Supp. 2019). The notice informed the plaintiff of his right to repurchase the property by paying back taxes, interest, costs, and penalties totaling $90,442.42. It further informed him that, if he decided to exercise this right, he had 30 days to provide written notice of his intent to repurchase the property, with payment due 15 days thereafter.[1] The plaintiff received the notice in January 2014.

Although the plaintiff did not respond to the notice, the Town did not sell the property. In April 2015, the plaintiff received another notice of the Town's intent to sell the property, informing him that he had a right to repurchase the property by payment of back taxes, interest, costs, and penalties, now in the amount of $94,271.93. The plaintiff thereafter offered to pay the amount of back taxes and interest, but requested that the Town waive the penalties. The Town rejected the offer. The plaintiff, through counsel, twice requested the Town to reconsider its decision. By letter, the Town informed plaintiff's counsel of its decision not to reconsider, and further stated, "More than three years has passed since the property was deeded to the Town in May of 2011. Consequently, your client's right of repurchase has terminated. The notice of intent to sell and right of repurchase, dated April 10, 2015, was sent in error, and is no longer operative." See RSA 80:89, VII (Supp. 2019).

The plaintiff filed suit against the Town, alleging, in part, that the Town's intent to keep excess proceeds from an eventual sale of the property violates his "right to the equity in the subject property" under Part I, Article 12 of the New Hampshire Constitution. The Trial Court (Abramson, J.) issued a preliminary injunction, enjoining the Town from selling the property until the resolution of the litigation. The parties thereafter filed cross-motions for summary judgment. The Town argued, in relevant part, that its duty to provide the plaintiff with excess proceeds terminated upon three years from the recording date of the tax deed, pursuant to RSA 80:89, VII. The Town characterized this three-year period as a statute of limitations, within which a former owner must assert his or her right to receive excess proceeds. The plaintiff countered that, even if RSA 80:89, VII removed the Town's affirmative obligation to provide excess proceeds to him, the statute does not bar him from bringing a claim to recover the excess proceeds. Alternatively, he argued that, if RSA 80:89, VII does bar his claim, it violates Part I, Article 12 of the State Constitution by allowing the Town to take his property without just

---

[1] The current version of RSA 80:89, II (Supp. 2019) provides 30 days to a former owner to pay back taxes, interest, costs, and penalties following the former owner's notice to the municipality of the intent to repurchase the property. At the time of the Town's notice, RSA 80:89, II provided only 15 days to make the payment. See RSA 80:89, II (2012) (amended 2016).

compensation. The Trial Court (Ruoff, J.) concluded that the statute did not preclude the plaintiff from recovering the excess proceeds from an eventual sale after three years, and, in light of this determination, did not address the plaintiff's constitutional argument.

The parties cross-appealed the trial court's decision to this court. See Polonsky v. Town of Bedford, 171 N.H. 89, 90-91 (2018). We determined, in relevant part, that the trial court's statutory interpretation conflicted with the plain language of RSA 80:89, VII, which does not allow a former owner to recover excess proceeds from a municipality after the three-year period has elapsed. Id. at 95-96. We concluded, therefore, that the trial court erred in finding that the statute did not bar the plaintiff's claim. Id. We remanded the plaintiff's takings argument and the Town's affirmative defenses for the trial court to address in the first instance. Id. at 98.

On remand, following a hearing, the Trial Court (Nicolosi, J.) first found that the Town executed a taking of the plaintiff's property, without compensation, when the tax collector issued the tax deed for the property to the Town. The trial court further observed that the application of the three-year period under RSA 80:89, VII would result in the "plaintiff being deprived of a $300,000 property for a $90,442.42 tax lien." The Town argued that RSA 80:89 provided a remedy for this otherwise unconstitutional taking, by giving the former owner three years to repurchase the property or file an action in court to compel the municipality to sell the property and pay the former owner the excess proceeds, which the plaintiff failed to do. The trial court concluded that this interpretation was inconsistent with the statutory provisions and concluded that "the statute violates the takings clause of the New Hampshire Constitution." The trial court also rejected the Town's argument that the plaintiff's claim is barred by the doctrine of unclean hands, and ruled that he is entitled to the excess proceeds of the eventual sale of the property. The Town appeals the trial court's decision.

## II. Standard of Review

Because this appeal presents a question of constitutional law and statutory interpretation, our review is de novo. State v. Marshall, 162 N.H. 657, 661 (2011). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Petition of Carrier, 165 N.H. 719, 721 (2013). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Id. Moreover, we do not consider words and phrases in isolation, but rather within the context of the

4

statute as a whole.  Id.  This construction enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme.  Id.

Further, in reviewing a statute, we presume it to be constitutional and will not declare it invalid except upon inescapable grounds.  New Hampshire Health Care Assoc. v. Governor, 161 N.H. 378, 385 (2011).  Accordingly, we will not hold a statute to be unconstitutional unless a clear and substantial conflict exists between it and the constitution.  Id.  When doubts exist as to the constitutionality of a statute, those doubts must be resolved in favor of its constitutionality.  Id.  The party challenging a statute's constitutionality bears the burden of proof.  Id.

### III. Analysis

The Town contends that the trial court erred in concluding that the statutory scheme is unconstitutional, asserting that the court failed to interpret the statutes in a way that would preserve their constitutionality. The Town also argues that the trial court erred in awarding the plaintiff equitable relief because he failed to take steps to avoid the taking of his property.

To address the Town's arguments, we must first set forth the relevant statutory provisions.  We note at the outset, however, that we do not construe the trial court's order as concluding that the entire statutory scheme governing tax deed procedures is unconstitutional. We recognize that the trial court interpreted numerous provisions of the statutory scheme, see RSA 80:88-:91, and did not expressly identify which statute "violates the takings clause of the New Hampshire Constitution." However, the trial court analyzed these statutory provisions for the purpose of addressing whether the application of the three-year period in RSA 80:89, VII, which terminates a municipality's duty to provide compensation to a former owner, results in an unconstitutional taking of the former owner's property. We therefore limit our analysis to this narrow inquiry.

### A. The Statutory Scheme

RSA chapter 80 (2012 & Supp. 2019) sets forth the procedures a municipality must follow to collect property taxes.  Under these provisions, when a property owner fails to pay property taxes for a given year, a municipality may impose a real estate tax lien upon the property for the amount of outstanding taxes.  See RSA 80:20-a, :59, :61 (2012).  The property owner may thereafter redeem the property by paying the municipality the amount of the lien.  See RSA 80:69 (Supp. 2019).  If, however, "after 2 years from the execution of the real estate tax lien," the owner has not redeemed the property, the tax collector "shall execute" a deed of the property to the municipality, known as a tax deed.  RSA 80:76, I.  Following the execution of

5

the tax deed, the municipality may act "in all respects as the fee owner" of the property, and may lease or encumber any portion, or all, of the property. RSA 80:91 (2012). To that end, the municipality may convey the property if authorized "by majority vote at the annual meeting, or city council by vote." RSA 80:80, I. The municipality may then sell the property by public auction or advertised sealed bids. RSA 80:80, II (Supp. 2019). However, the municipality also "may retain and hold [the property] for public uses . . . upon vote of the town meeting or city council." RSA 80:80, V (Supp. 2019).

The municipality's ownership rights to property acquired by tax deed are limited in two respects. First, at any time within 3 years after the date of recording of the tax deed, the former owner may repurchase the property by notifying the municipality of his or her intent and, within 30 days of the notice, tendering payment of back taxes, interest, costs, and penalties. RSA 80:89, II (Supp. 2019). Alternatively, if the municipality intends to sell the property, at least 90 days prior to offering the property for sale, the municipality must notify the former owner of the impending sale and provide him or her with the right to repurchase the property for the amount of back taxes, interest, costs, and penalties. RSA 80:89, I. If the former owner notifies the municipality of his or her intent to repurchase the property within 30 days, and then tenders payment of the back taxes, interest, costs, and penalties within 30 days of providing notice, the municipality must convey the property back to the former owner. RSA 80:89, II. Upon repurchase, the former owner's title would be subject to any leases, easements, or other encumbrances placed on the property by the municipality. RSA 80:89, IV (Supp. 2019). However, the former owner's right to repurchase the property and the municipality's duty to notify the former owner of an impending sale "terminate 3 years after the date of recording of the deed." RSA 80:89, VII. Other than a former owner's right to repurchase the property, "[n]othing in [RSA chapter 80] . . . obligate[s] a municipality to dispose of property acquired by tax deed." RSA 80:91.

Second, when a municipality sells property it has acquired by tax deed, "the municipality's recovery of proceeds from the sale" is limited "to back taxes, interest, costs and penalty." RSA 80:88, I (2012), :91. When a sale results in "excess proceeds over and above" the amount of back taxes, interest, costs, and penalties, the municipality must pay the excess proceeds to the former owner or record lienholders and follow specific statutory procedures to tender that payment. See RSA 80:88, II-III (2012). However, similar to the former owner's right to repurchase and the municipality's notice requirements, the municipality's duty to provide excess proceeds to the former owner "terminate[s] 3 years after the date of recording of the deed." RSA 80:89, VII. The statutory scheme contains no requirement that the municipality sell the property within the three-year period or otherwise provide compensation to the former owner. See generally RSA 80:88-:91.

6

## B. The Takings Clause

Part I, Article 12 of the New Hampshire Constitution provides that "no part of a man's property shall be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people." This provision requires just compensation in the event of a taking. Thomas Tool Servs. v. Town of Croydon, 145 N.H. 218, 218-20 (2001). Because the right to property is a fundamental right in New Hampshire, all subsequent grants of power, including the taxing power, are limited by the extent to which they adversely affect property rights. Id.

We have considered the constitutionality of prior versions of the statutes governing tax liens and deeds. See id.; First NH Bank v. Town of Windham, 138 N.H. 319, 327-28 (1994); see also First NH Bank, 138 N.H. at 331-32 (Horton, J., concurring). Those versions, however, did not include the procedures that now apply after a tax collector has issued the tax deed to the municipality, and therefore allowed municipalities to acquire property by tax deed without compensating the former owner for any equity that exceeded the amount owed. See Thomas Tool, 145 N.H. at 220; First NH Bank, 138 N.H. at 331-32; Laws 1998, 238:2 (enacting RSA 80:88-:91). Nevertheless, these cases are instructive to our decision here.

In First NH Bank, a municipality executed tax liens on several properties, and, after the property owner failed to redeem the properties from the liens, the tax collector issued deeds for the properties to the municipality. First NH Bank, 138 N.H. at 320. A bank, which held mortgages on the properties, challenged the municipality's acquisitions. Id. The bank argued, in part, that the municipality violated due process by failing to provide the bank with adequate notice and engaged in an unconstitutional taking by retaining the value of the real estate in excess of the unpaid taxes and costs. Id. at 320-21. The majority resolved the issue in favor of the bank on due process grounds. Id. at 327-28.

However, in his seminal concurring opinion, Justice Horton addressed the plaintiff's takings argument. Id. at 331-32 (Horton, J., concurring). He stated that he would have found the tax deed procedure "constitutional only if it [were] read to provide for taking of the taxable property only to the extent of the lien." Id. at 332. He further explained that he would permit a former owner or other parties who have rights in the property taken by tax deed to, within a reasonable amount of time, "petition in equity for an accounting by the taxing authority and for the return, in priority and as equitable, of a sum equal to the excess of the land value, at the time of taking, over the amount of the taxes and charges accrued at taking." Id. In Justice Horton's view, "[s]uch a construction, combined with the supplementary procedure, would permit the statutory procedure to withstand constitutional challenge." Id.

7

Following our decision in First NH Bank, we were confronted with the same question in Thomas Tool: whether the tax deed procedures violated the takings clause of the New Hampshire Constitution by allowing a municipality to acquire a delinquent taxpayer's property by tax deed without compensating the former owner for the equity in the property that exceeded the amount owed. Thomas Tool, 145 N.H. at 220. There, a municipality acquired property that the plaintiff had purchased for at least $65,000 to satisfy a tax delinquency of $370.26, without providing any compensation to the plaintiff. Id. at 219. The trial court granted summary judgment for the plaintiff, ruling that the tax deed procedure is "constitutional only if . . . read to limit the taking of taxable property to the extent necessary to satisfy" the tax debt, interest, costs, and penalty. Id. (quotation omitted). We affirmed the trial court's decision and held that the tax deed procedure was unconstitutional. Id. at 220. We did not comment on the merits of Justice Horton's concurrence in First NH Bank, but observed that, under the facts of the case, the tax deed procedure allowed the municipality to "realize[] an enormous surplus," which, we concluded, "result[ed] in an unduly harsh penalty." Id. We noted that the legislature had amended these procedures in 1998, but we expressed no opinion as to the constitutionality of the amended process. Id.

## C. Constitutionality of RSA 80:89, VII

We now are confronted with a challenge to the constitutionality of a provision within the amended process — specifically, the termination of a municipality's duty to pay excess proceeds from a sale of property acquired by tax deed to the former owner. See RSA 80:89, VII. Upon our review of RSA 80:89, VII, viewed in the context of the statutory scheme, we conclude that a clear and substantial conflict exists between the termination of the municipality's duty to pay excess proceeds to the former owner and Part I, Article 12 of the New Hampshire Constitution. See New Hampshire Health Care Assoc., 161 N.H. at 385.

As an initial matter, the trial court found, and the parties do not dispute, that a taking of property occurs when the tax collector executes a tax deed to the municipality. See RSA 80:76, I. Accordingly, we will assume without deciding that a taking occurred when the tax deed was executed. For the purposes of this opinion, when the tax collector issues the municipality a tax deed, see RSA 80:76, I, the municipality has executed a taking of the property, requiring that it provide just compensation to the former owner when, as here, the equity in the property exceeds the amount owed. See Thomas Tool, 145 N.H. at 220; First NH Bank, 138 N.H. at 331-32.

The Town argues that the procedures set forth in RSA 80:88 and :89 provide "remedies" for this taking by "permit[ting] a former owner to repurchase the property or receive the proceeds from the sale of the property in excess of the taxes, interest, fees, costs, and any penalty." However, when a former

8

owner does not exercise the option to repurchase the property within three years, the statutes do not guarantee that a former owner will receive excess proceeds from the municipality.  Although RSA 80:88 and :89, VII, when read together, require the municipality to pay a former owner excess proceeds if the municipality sells the property within the three-year period, none of the statutory provisions require the municipality to sell the property.  In fact, the statutory provisions expressly permit the municipality to keep the property, see RSA 80:80, V, :91, except when a former owner seeks to repurchase it within the three-year period, see RSA 80:89, II, :91.  The obligation to pay the former owner excess proceeds, therefore, only arises if the municipality chooses to conduct a sale of the property within the three-year period.  Accordingly, whenever a municipality has not sold property acquired by tax deed within the three-year period, the outcome is no different than that in Thomas Tool — the municipality acquires the property free of any obligation to provide compensation to the former owner, regardless of the equity in the property that exceeds the amount owed.  See Thomas Tool, 145 N.H. at 220; First NH Bank, 138 N.H. at 331-32.  The termination of the municipality's duty to provide excess proceeds under RSA 80:89, VII, therefore, conflicts with the takings clause of the New Hampshire Constitution.

The Town asserts, however, that RSA 80:89, VII is not unconstitutional if we interpret the statutory scheme to allow the former owner to petition a court in equity to compel the municipality to sell the property. It argues that we "would be acting well within [our] authority to rule that" the former owner's right to excess proceeds is "subject to vindication by [the] former owner, who may petition in equity to compel the sale of a property . . . , so long as suit is brought within the three years" provided in RSA 80:89, VII.  In other words, the Town asserts that we should interpret the statutes as requiring the former owner to bring an action to compel the municipality to sell the property, and hold that, if he fails to do so within the three-year period, he forfeits his right to receive the excess proceeds.

Yet, nothing within the statutory scheme allows for such an interpretation.  The statutes place no obligation upon the former owner to take any action to receive excess proceeds, let alone file a lawsuit against the municipality to compel the sale of property that it now owns.  In fact, the Town's interpretation contradicts the statutory scheme's express language.  RSA 80:91 provides that "[n]othing" in RSA chapter 80 shall require a municipality to dispose of property acquired by tax deed, except as provided in RSA 80:89.  Under RSA 80:89, a municipality is only obligated to sell the property when the former owner seeks to repurchase the property within the requisite time period.  See RSA 80:89, II.  Thus, requiring the former owner to bring an action to compel the municipality to sell the property would be contrary to the express language of RSA 80:91.

9

Furthermore, other statutory provisions evince the legislature's intent to grant the municipality, not the former owner or the courts, the authority to decide the appropriate disposition of the property. See RSA 80:80, I (requiring authorization by vote at the annual meeting or vote of the city council to sell property acquired by tax deed), V (allowing a municipality to keep property acquired by tax deed for public uses), :91 (explaining that the municipality may act as the fee owner of the property and may encumber the property without regard to the former owner). Thus, not only does the Town's interpretation require that we depart from a canon of statutory interpretation — we will not add language to the statute that the legislature did not see fit to include, see Carrier, 165 N.H. at 721 — it expressly contradicts the plain meaning of the existing statutory language. See Polonsky, 171 N.H. at 96 (explaining that the canon of constitutional doubt, in which we resolve the interpretation of a statute in favor of its constitutionality, is "useful when the language is ambiguous and a [constitutional] construction of the statute is fairly possible" (quotation omitted)); Miller v. French, 530 U.S. 327, 341 (2000) ("We cannot press statutory construction to the point of disingenuous evasion even to avoid a constitutional question." (quotation omitted)).

The Town argues that, by enacting the three-year period in RSA 80:89, VII, the legislature intended to "specifically limit the time period within which the former owner could either repurchase the property or recover excess proceeds from its sale." The Town contends that such a limitations period is reasonable. Regardless of whether the limitations period is reasonable, RSA 80:89, VII places no obligation upon the former owner to bring an action to compel the sale of property as a prerequisite to receiving the excess proceeds. It simply terminates the duties of the municipality to pay the excess proceeds to the former owner, to provide notice to the former owner of the municipality's intent to sell, and to resell the property to the former owner. See RSA 80:89, VII. To the extent that the Town contends that RSA 80:89, VII imposes a statute of limitations upon a former owner to bring a lawsuit, thereby implicitly requiring a former owner to file suit to compel a sale, the statutory language does not support such a construction. Compare RSA 80:89, VII ("The duty of the municipality to . . . distribute proceeds pursuant to RSA 80:88 . . . shall terminate 3 years after the date of recording the deed."), with RSA 80:78 (2012) ("No action, suit or other proceeding shall be brought to contest the validity of . . . any collector's deed . . . after 10 years from the date of record of the collector's deed.") and RSA 508:4 (2010) ("[A]ll personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of . . . .").

Nevertheless, the Town contends that, "[o]n many occasions this Court has interpreted the tax statutes in a manner which preserves their constitutionality by prescribing supplementary, extra-statutory measures." The Town identifies three cases in which, it contends, we have done so, and

10

suggests that we do so here.  See First NH Bank, 138 N.H. at 327-28; White v. Lee, 124 N.H. 69, 74 (1983); Manchester v. Straw, 86 N.H. 390, 393 (1933).

In each of these cases, however, the rule that we announced was based upon a specific constitutional mandate.  See, e.g., First NH Bank, 138 N.H. at 327-28.  For example, in First NH Bank, we concluded that the notice requirements of the due process clause required the municipality to provide notice of an impending tax deed to mortgagees who held mortgages on subject properties, despite the absence of a statutory requirement.  Id.  We reasoned that, without this requirement, a mortgagee who maintains a secured interest on property subject to a tax lien would be deprived of its property interest without the opportunity to avoid the municipality's acquisition, in violation of due process.  See id. at 327.  In so holding, however, we explained that the bank's "right to notice . . . is a constitutional mandate rather than an express statutory requirement."  Id. at 328; see also White, 124 N.H. at 74 (holding that due process requires municipalities to provide notice of a tax sale to current owners of the subject property); Straw, 86 N.H. at 390 (preface to opinion), 393 (holding that the takings clause limited a municipality's assessment for a curbing improvement against an individual property owner to "the value of the special benefit" or, if less, one-half of the expense of the improvement).

The constitutional provision at issue here — the takings clause — prohibits a municipality from taking property without providing just compensation.  See N.H. CONST. pt. I, art. 12; Thomas Tool, 145 N.H. at 220. As we have stated, when the municipality acquires property by tax deed that is worth more than the amount owed, the municipality is required to provide compensation to the former owner.  See Thomas Tool, 145 N.H. at 220.  The takings clause, however, does not require a former owner to take any action to receive that compensation, and the Town points to no other constitutional provision that imposes such a requirement.  Thus, there is no constitutional mandate for the remedy the Town seeks.  Cf. First NH Bank, 138 N.H. at 328.

Accordingly, we conclude that the termination under RSA 80:89, VII of the municipality's duty to provide excess proceeds three years after the date of the recording of the tax deed violates Part I, Article 12 of the New Hampshire Constitution.  See Thomas Tool, 145 N.H. at 220.  We note, however, that our holding is narrow.  This ruling does not affect the validity of the other provisions of the statutory scheme, including the three-year limitation upon a former owner's right to repurchase the property and the municipality's notice requirements.  See RSA 80:89, VII.

### D. Equitable Relief

To remedy the constitutional violation, the trial court found that the plaintiff "is entitled to the excess proceeds of the sale after payment of the amount owed to the Town." The Town argues that, because the plaintiff failed

11

to take steps to protect his interest in the property prior to and after his tax delinquency — including his failure to repurchase the property or provide the Town with the requested financial information — he is not entitled to this equitable relief. See RSA 80:89, II; see also RSA 72:37-b, I (2012) (providing a property tax exemption for individuals who are eligible to receive disability benefits); RSA 76:16, I(a) (Supp. 2019) (allowing a taxpayer to seek a tax abatement based upon the inability to pay); RSA 80:69 (allowing a delinquent taxpayer to redeem property following the execution of the tax lien).

In the trial court, the Town relied upon the doctrine of unclean hands in asserting this argument. Under this doctrine, "[e]quitable relief will be denied if one comes to the court with unclean hands." Noddin v. Noddin, 123 N.H. 73, 76 (1983). "The party to a suit, complaining that his opponent is in court with 'unclean hands' because of the latter's conduct must show that he himself has been injured by such conduct, to justify application of the principle to the case." Cornwell v. Cornwell, 116 N.H. 205, 210 (1976) (quotation and ellipsis omitted).

The trial court rejected the Town's argument, finding that, "[u]nder the statutory scheme, a former owner who does not pay his or her taxes and who also chooses not to repurchase his or her property suffers the loss of the property, but is still entitled to the excess proceeds of the municipality's sale of the property." We review the trial court's decision whether to grant equitable relief for an unsustainable exercise of discretion. Benoit v. Cerasaro, 169 N.H. 10, 19 (2016). In doing so, we determine whether the record establishes an objective basis to sustain the discretionary judgment made. Id. at 20. The party asserting that a trial court order is unsustainable must demonstrate that the ruling was unreasonable or untenable to the prejudice of his or her case. Id.

We recognize that the plaintiff did not take steps to avoid or correct his tax delinquency status, redeem his property after the execution of the tax lien, or repurchase it for the full amount owed after the Town acquired the property by tax deed. We also recognize that the plaintiff requested to repurchase the property for less than the amount owed, but then failed to provide the Town with requested financial information to support his request. We reiterate our statement in Thomas Tool that we do not condone the failure to pay taxes. See Thomas Tool, 145 N.H. at 220. Nevertheless, we have held that, under Part I, Article 12 of the New Hampshire Constitution, the taking of property without just compensation is unconstitutional, even when the municipality has taken the property by tax deed due to the former owner's failure to pay taxes. See id. Thus, when a municipality acquires property by tax deed and the equity in the property exceeds the amount owed, a taking has occurred, regardless of whether the former owner took steps to correct the consequences of the tax delinquency. See id.

Here, as the trial court observed, the plaintiff has suffered the loss of the equity in the property that vastly exceeded the amount he owed to the Town.[2] Even though the plaintiff initiated negotiations with the Town to repurchase the property during the three-year period, nothing in the record demonstrates that the plaintiff's actions prohibited the Town from selling the property before the three-year period expired. Indeed, after the plaintiff failed to provide the requested financial information, the Town Council voted to sell the property in July 2013, nearly one year before the three-year period expired. Therefore, the Town has failed to demonstrate that the ordered relief was unreasonable. Based upon the statutory scheme and Part I, Article 12, the plaintiff was entitled to equitable relief. Accordingly, the trial court did not unsustainably exercise its discretion in awarding equitable relief to the plaintiff. The plaintiff does not cross-appeal the remedy awarded by the trial court, and therefore we express no opinion as to that issue.

## IV. Conclusion

Because RSA 80:89, VII extinguishes a municipality's duty to provide excess proceeds to a former owner as compensation for the taking of his or her property by tax deed after three years from the date of the recording of the deed, without requiring that the municipality execute that duty, the statute's three-year limitation upon the municipality's duty to pay excess proceeds violates Part I, Article 12 of the New Hampshire Constitution. Because the Town acquired the plaintiff's property without providing compensation, the trial court did not err in awarding equitable relief to the plaintiff.

Affirmed.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

---

[2] The record before us only reflects the property's assessed value in 2008 of $309,900. At oral argument, the Town represented that the property has been sold and that the proceeds are currently being held in escrow. The Town makes no contention that, at the time of the sale, the value of the property had significantly fallen since 2008, or that the proceeds from the sale did not exceed the amount owed to the Town.

13