Hillsborough-southern judicial district
No. 92-719

THE STATE OF NEW HAMPSHIRE

v.

MARK ST. LAURENT

May 19, 1994

*Jeffrey R. Howard*, attorney general (*Janice K. Rundles*, assistant attorney general, on the brief and orally), for the State.

*James H. Moir*, public defender, of Concord, by brief and orally, for the defendant.

HORTON, J. The defendant, Mark St. Laurent, was convicted of one count of first degree assault, RSA 631:1 (1986 & Supp. 1993), after a jury trial in the Superior Court (*Perkins*, J.). On appeal, the defendant argues that the trial court erred in excluding the testimony of his expert psychologist concerning the defendant's ability to formulate the *mens rea* required to commit the crimes with which he was charged. We affirm.

The defendant and Virginia Meedzan were divorced in 1991. Later that year, Meedzan moved back into the defendant's house because they were attempting to reconcile their marriage. On July 14, 1991, Meedzan informed the defendant that she intended to leave him again. They agreed that the defendant would keep their five-year-old daughter for the day while Meedzan looked for another place to live. The defendant spent the day drinking beer and whiskey at his sister's house, and a friend drove him and his daughter home because the defendant was intoxicated. Meedzan arrived at the house with her friend, Carrie Ducharme, who was seven months pregnant, and Ducharme's two-year-old son. Ducharme and her son remained in the car while Meedzan walked toward the front door. The defendant ran out of the house and shoved a .22 caliber rifle into Ducharme's mouth as she sat in the car. After Ducharme pushed the gun out of her mouth, the rifle discharged over her head. The defendant shot the gun outside the car a few times, and then hit Ducharme in the ribs and face with the gun barrel. Meedzan got into the car and drove away. According to the police officer who interviewed the defendant after the incident, the defendant thought that Ducharme was Meedzan's boyfriend.

To the charges of assault and attempted murder of Ducharme, the defendant pleaded not guilty and not guilty by reason of insanity. He requested a bifurcated trial. *See Novosel v. Helgemoe*, 118 N.H. 115, 384 A.2d 124 (1978). At a pretrial hearing, the defendant moved for a ruling on the admissibility of expert psychiatric opinion testimony concerning his inability to formulate the intent required to commit the crimes charged. He indicated that if this testimony were held to be inadmissible at the guilt phase, he would choose a nonbifurcated trial at which both his guilt and sanity would be decided at the same trial. *See generally id.* He represented that his psychological expert

would testify that "the bizarre circumstances of the entire day coupled with a victim who is a stranger . . . make the presence of a calculated intention[ ] quite unlikely." The court denied the defendant's motion, concluding that "diminished capacity is not a defense adopted in New Hampshire," and explaining:

> "Although the defendant will be allowed to present evidence concerning his alleged intoxication and its effect on his ability to formulate a specific intent under RSA 626:4, and evidence concerning his alleged insanity, he will not be permitted to present expert evidence concerning the effect his alleged mental illness or disorder may have had on his ability to formulate a specific intent."

The defendant chose a nonbifurcated trial, and attempted at trial to admit the psychologist's testimony solely on the issue of whether the defendant was able to formulate the requisite intent to commit the crimes charged. The trial court excluded the evidence.

The defendant properly frames the issue before us: whether an expert psychological opinion is admissible on the ultimate issue of whether the defendant possessed the requisite *mens rea* for the crimes charged. The expert psychological testimony was not being offered to prove a separate defense of diminished capacity or diminished responsibility, but only to negate an element of the State's *prima facie* case. *See* Morse, *Undiminished Confusion in Diminished Capacity*, 75 J. CRIM. L. & CRIMINOLOGY 1, 6–9 (1984); *State v. Provost*, 490 N.W.2d 93, 98 (Minn. 1992), *cert. denied*, 113 S. Ct. 1306 (1993). Quite simply, the defendant sought to have his expert testify that he did not form the guilty intent necessary for the crime.

 Having determined that the defendant is not advocating the adoption of a new criminal defense, we return to the basic evidentiary rules regarding experts. The defendant sought to offer expert psychological testimony on the ultimate issue of whether he formed the intent required to commit first degree assault and the mental state required by the other crimes with which he was charged; that is, whether he "knowingly" caused bodily injury to another by means of a deadly weapon. *See* RSA 631:1. Our starting point is New Hampshire Rule of Evidence 702, which states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise." Such testimony "is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." N.H. R.

EV. 704. Therefore, an important determination affecting the admissibility of expert psychological testimony is whether the testimony will aid the jury in its search for the truth. *See* N.H. R. Ev. 702 reporter's notes. The question "is whether the witness, by either study or experience, has knowledge on the subject matter of his or her testimony so superior to that of people in general concerning it that his or her views will probably assist the triers of fact." *Id.* (quotation omitted); *see also Dwire v. Sullivan*, 138 N.H. 428, 431, — A.2d —, — (1994); *cf. State v. Cressey*, 137 N.H. 402, 411, 628 A.2d 696, 702 (1993). We conclude that the testimony of an expert psychologist on the ultimate issue of whether the defendant in fact formed or was capable of forming the requisite intent for the crimes charged will not aid the jury in its search for truth.

The jury is capable of deciding the issue of intent without expert assistance. "Jurors in their everyday lives constantly make judgments on whether the conduct of others was intentional or accidental . . . ." *Provost*, 490 N.W.2d at 101. The expert unquestionably has the ability to look at what the defendant said and did to form an opinion on whether the assault was done knowingly, but this is not beyond the ken of the average juror. Thus, it is the factfinder's responsibility to determine intent, not the expert's as a thirteenth juror. *See id.* A psychological expert does not possess knowledge "superior" to that of the average person on the issue of intent. Therefore, we conclude that the trial court properly excluded the proffered testimony. *See Cressey*, 137 N.H. at 411, 628 A.2d at 702.

While our holding precludes an expert psychologist from expressly stating a final conclusion concerning the defendant's culpable mental state, we do not address, in this opinion, the admissibility of other psychological evidence to negate *mens rea*. *See United States v. Richard*, 969 F.2d 849, 854–55 (10th Cir.), *cert. denied*, 113 S. Ct. 248 (1992), *and* 113 S. Ct. 1009 (1993); Morse, *supra* at 51–52.

*Affirmed.*

All concurred.