Hillsborough-northern judicial district
No. 2006-463

### BRUCE BUCHHOLZ & a.

v.

### WATERVILLE ESTATES ASSOCIATION

Submitted: April 5, 2007
Opinion Issued: September 20, 2007

*Walker & Buchholz, P.A.*, of Manchester (*Kevin E. Buchholz* on the brief), for the plaintiffs.

*Law Office of Joshua L. Gordon*, of Concord (*Joshua L. Gordon* on the brief), and *Scott D. McGuffin*, of Laconia, on the brief, for the defendant.

HICKS, J. The plaintiffs, Bruce Buchholz and Erin O'Neill Buchholz, appeal an order of the Superior Court (*Abramson*, J.) granting summary judgment to the defendant, Waterville Estates Association. We affirm.

The following appears in the record: On January 28, 2002, the town of Campton acquired, by tax deed, a large number of properties located in a

condominium development called Waterville Estates. By auction the plaintiffs purchased an unimproved lot within the development. Title passed by a deed entitled "Quitclaim Deed with No Covenants," which described the land as being recorded in the town's warrant book as "Homesite F-14" with a corresponding map and lot number.

After the plaintiffs acquired the property, the defendant sought to collect association dues and assessments that had been assessed after the town acquired the property by tax deed. The plaintiffs denied any obligation to pay the fees and filed a petition to remove the "cloud" of the declarations from their title to the condominium unit. They also filed a claim under the Consumer Protection Act alleging that the defendant's efforts to collect the fees and the subsequent placement of a lien on their property were unfair or deceptive acts. *See* RSA 358-A:2 (Supp. 2006).

The defendant filed a motion for summary judgment, asserting that the plaintiffs were bound by the restrictions, easements and covenants contained in the governing documents of the association as well as by the Condominium Act, RSA chapter 356-B (1995 & Supp. 2006). The defendant also filed a counterclaim to collect the fees due, asserting a lien on the plaintiffs' property. The trial court granted the defendant's motion for summary judgment and denied the plaintiffs' motion for reconsideration. This appeal followed.

> In acting upon a motion for summary judgment, the trial court is required to construe the pleadings, discovery and affidavits in the light most favorable to the non-moving party to determine whether the proponent has established the absence of a dispute over any material fact and the right to judgment as a matter of law.

*Porter v. City of Manchester*, 155 N.H. 149, 153 (2007). "An issue of fact is material if it affects the outcome of the litigation." *Id.* "In reviewing a denial of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party." *Id.*

This case implicates the interplay among the Condominium Act, RSA 80:61 (2003) (governing real estate tax liens), and the holding in *First NH Bank v. Town of Windham*, 138 N.H. 319, 323 (1994). "We are the final arbiter of the meaning of a statute as expressed in the words of the statute itself." *Greene v. Town of Deering*, 151 N.H. 795, 798 (2005). "When construing the meaning of a statute, we first examine its language and, where possible, ascribe the plain and ordinary meanings to words used. When the language used in the statute is clear and unambiguous, its

meaning is not subject to modification by judicial construction." *Corcoran v. Harmon*, 154 N.H. 411, 412-13 (2006) (citation omitted).

*I. Condominium Fees Surviving a Tax Lien*

On appeal, the plaintiffs first argue that pursuant to *First NH Bank*, 138 N.H. at 323, when they took title to the land, they took a "100 percent common and undivided interest in the property," RSA 80:61, thereby stripping away all encumbrances upon it, including condominium assessments and fees. We disagree.

■ RSA 80:61, upon which the court in *First NH Bank* relied, reads in pertinent part:

> An affidavit of the execution of the tax lien to the municipality, county or state shall be delivered to the municipality by the tax collector on the day following the last date for payment of taxes .... The collector shall execute to the municipality, county or state only a 100 percent common and undivided interest in the property and no portion thereof shall be executed in severalty by metes and bounds; provided, however, that where distinct interests in the property have been separately assessed pursuant to RSA 75:2, the tax lien executed to the municipality, county, or state shall be for 100 percent of the separate distinct interest upon which the taxes have not been fully paid.

In *First NH Bank*, we held that mortgages did not have priority over tax liens and that such encumbrances are divested at the issuance of the tax lien when the right of redemption expires. *Id.* at 324. It is true that "a new and independent title to one hundred percent of the land ... is the ultimate product of the tax lien procedure." *Id.* This case, however, does not deal with a mortgage interest; it concerns condominium covenants.

"Condominium declarations are covenants running with the land." 15A AM. JUR. 2D *Condominiums and Cooperative Apartments* § 7 (2002); *see LaSalle Nat. Trust v. Board of Directors*, 677 N.E.2d 1378, 1382 (Ill. App. Ct.), *appeal denied*, 680 N.E.2d 1163 (Ill. 1997); *In re Beeter*, 173 B.R. 108 (Bankr. W.D. Tex. 1994). "The condominium declaration covenants and the estate in land upon which they are imposed are literally inseparable." 15A AM. JUR. 2D, *supra*. "Each condominium owner finds [his or her] estate both burdened by the assessment obligation and benefited by the function that the assessments serve (namely, the maintenance and preservation of the common areas, in which the [plaintiffs have] an undivided interest inseparable from [their] interest in the condominium unit itself)." *In re*

*Beeter*, 173 B.R. at 115. Condominium covenants "sink their tentacles into the soil." *Id.* at 114 n.6.

The question of whether condominium covenants survive a tax sale is novel in this jurisdiction. "Generally, an easement or covenant is an interest in land separate from and 'carved out' of a servient estate; in the majority of jurisdictions it survives a tax sale . . . ." *Thirteen South v. Summit Village*, 866 P.2d 257, 259 (Nev. 1993); *see also Schlafy v. Baumann*, 108 S.W.2d 363, 368 (Mo. 1937); *Northwestern Improvement Co. v. Lowry*, 66 P.2d 792, 795-96 (Mont. 1937); *Alamogordo Improvement Co. v. Prendergast*, 91 P.2d 428, 431-32 (N.M. 1939); Annotation, *Easement, Servitude, or Covenant as Affected by Sale for Taxes*, 7 A.L.R.5TH 187, 203 (1992) (collecting cases).

■ Although we have not ruled on the survival of covenants in New Hampshire, we have held that easements survive a sale for taxes. *See Gowen v. Swain*, 90 N.H. 383, 386-87 (1939). Consistent with established authority in this and other jurisdictions we hold that the plaintiffs took title subject to the condominium covenants that ran with the land.

*II. Affidavit*

Next, the plaintiffs argue that the trial court erred by relying upon a faulty affidavit in granting the motion for summary judgment. The plaintiffs attack the affidavit as being "an expression of purely personal opinion." *Brown v. John Hancock Mut. Life Ins. Co.*, 131 N.H. 485, 491 (1989).

■ RSA 491:8-a, II (1997) states in pertinent part: "Any party seeking summary judgment shall accompany his motion with an affidavit based upon personal knowledge of admissible facts as to which it appears affirmatively that the affiants will be competent to testify." Here, the sworn affidavit was sufficient and met the requirements of RSA 491:8-a. The affiant was the accounts manager for the defendant. In such a capacity she would have "personal knowledge of admissible facts," RSA 491:8-a, regarding the property purchased by the plaintiffs and its status as part of the condominium.

To the extent the plaintiffs challenge the affidavit as lacking a definitive statement that the property purchased by the plaintiffs was in fact part of the condominium, we hold that this argument is not preserved. Nowhere in the record below did the plaintiffs dispute that they had purchased property that was part of the condominium. Most notably, the plaintiffs did not challenge the trial court's characterization of their property as "located in a development operated by the defendant, Waterville Estates Association." "It is a long-standing rule that parties may not have judicial

review of matters not raised in the forum of trial." *Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004).

### III. Perfection of Defendant's Lien

The plaintiffs next assert that there were factual disputes relative to the defendant's perfection of the lien and the amount of the lien. The affidavit filed by the defendant noted there was a "filing of the lien documentation in the Grafton County Registry of Deeds." The plaintiffs did not dispute the amount of the lien before the trial court; therefore, we will not address it for the first time on appeal. *See id.*

■ Regarding the plaintiffs' claim that the defendant improperly perfected the lien, we see no dispute upon these facts that would warrant a denial of summary judgment. "The party objecting to a motion for summary judgment may not rest upon mere allegations or denials of his ... pleadings ...." *Panciocco v. Lawyers Title Ins. Corp.*, 147 N.H. 610, 613 (2002). The plaintiffs' "response, by affidavits or by reference to depositions, answers to interrogatories, or admissions, must set forth specific facts showing that there is a genuine issue of material fact for trial." *Id.* (quotation and brackets omitted). Because the plaintiffs have failed to set forth specific facts demonstrating a relevant dispute regarding the perfection of the lien, we agree with the trial court's conclusion that the evidence presented by the defendant was sufficient to support summary judgment.

### IV. Consumer Protection Act Claims

Next, the plaintiffs challenge the trial court's grant of summary judgment on their second count, an allegation that the defendant's efforts to collect association dues and fees constituted unfair and/or deceptive acts within the meaning of the Consumer Protection Act, RSA 358-A:2. The plaintiffs also argue that they were denied participation in the condominium association.

■ The trial court properly found that the actions taken by the defendant to collect fees were not unlawful under RSA 358-A:2. Such fee collection procedures are explicitly allowed by the Condominium Act. RSA 356-B:46 (1995), :46-a (Supp. 2006) (provisions dealing with unpaid assessments and remedies). Mechanisms of participation in the association, too, are statutorily outlined and nothing in the record shows that the plaintiffs were prevented from exercising their statutory rights with respect to matters such as meetings, quorums, voting, and availability of a list of all members of the association. RSA 356-B:37, :38, :39 (1995).

## V. Due Process Argument

Finally, the plaintiffs argue that their due process rights were violated by the assessment of a one-time capital improvement fund fee. The cursory reference to due process rights without authority is insufficient for our review. "[P]assing reference to 'due process,' without more, is not a substitute for valid constitutional argument." *State v. Chick*, 141 N.H. 503, 504 (1996). Accordingly, the trial court properly granted summary judgment for the defendant.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.