Merrimack
No. 2006-814

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL J. LABRANCHE, JR.

Argued: January 16, 2008
Opinion Issued: February 26, 2008

*Kelly A. Ayotte*, attorney general (*N. William Delker*, senior assistant attorney general, on the brief and orally), for the State.

*James T. Brooks*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Michael J. Labranche, Jr., appeals his first degree murder conviction. *See* RSA 630:1-a (2007). He argues that the Superior Court (*Conboy*, J.) erred by permitting the State's expert psychiatrist to testify that the charged offense was not the product of his mental illness. We affirm.

The following is supported by the record. On the afternoon of August 29, 2005, motorists witnessed the defendant's mother, Jane Labranche, lying by the road outside of the home she shared with the defendant in Franklin. Several witnesses stopped to help Jane, who was covered in blood from repeated stab wounds. One witness testified that Jane told him that it was her son, the defendant, who stabbed her and that he was still in the house. Jane later died from multiple stab wounds. After Jane was seen lying by the road, the defendant was seen leaving the house and driving away in his Chevrolet Nova. Later that day, police found the defendant in Concord sitting in his parked Nova. He was arrested for the murder of Jane Labranche.

Before trial, the defendant provided notice to the court that he intended to enter a plea of not guilty by reason of insanity. *See* RSA 628:2 (2007). He submitted a motion to exclude the testimony of the State's expert psychiatrist "on the question of whether or not the death of Jane Labranche was the product of [the defendant's] mental illness or mental defect." The court denied the motion.

At the nonbifurcated trial, the State's expert psychiatrist, Dr. Albert Drukteinis, testified that while the defendant "did have a psychotic disorder," it was his opinion that the defendant's "actions were not the product of a mental illness." Dr. Drukteinis testified that because he has a medical degree, he has a "broader understanding of the body and the brain and brain function." He further explained that in an insanity case such as this, he offers his opinion on whether the defendant has "a mental disorder," whether "that mental disorder rise[s] to the level of a mental illness," "the features of that illness, and then whether the behavior or actions . . . are a product of that mental disorder or mental illness."

At the close of the evidence, the court instructed the jury:

> The opinion of an expert may assist you in understanding the evidence and in deciding the facts in the case. But you are not bound by the opinion of an expert. You are free to ignore the expert's opinion if you find that the reasons given in support of the opinion are not sound, or if you find that other evidence outweighs the opinion.

The court further instructed: "It's up to you, the jury, to determine as questions of fact whether the Defendant suffered from a mental disease or defect, and that such caused him to act as he has been charged." The jury returned a guilty verdict.

The defendant now appeals, arguing that "the trial court erred in permitting the State's expert psychiatrist to testify that the homicide was not the product of [the defendant's] mental illness" and that the admission of this testimony "rendered the trial fundamentally unfair," which violated his right to due process under the New Hampshire Constitution.

The trial court retains the discretion to admit expert testimony and we review its decision under an unsustainable exercise of discretion standard. *Milliken v. Dartmouth-Hitchcock Clinic*, 154 N.H. 662, 665 (2006). To show that the trial court's decision was not sustainable, the defendant must show that the ruling was clearly untenable or unreasonable to the prejudice of his case. *Id.*

■ RSA 628:2, I, provides, in pertinent part, "A person who is insane at the time he acts is not criminally responsible for his conduct." Insanity is an affirmative defense in New Hampshire. *State v. Abbott*, 127 N.H. 444, 448 (1985). A defendant asserting an insanity defense must establish that he suffered from a mental illness and that the crime charged was a product of that illness. *Id.* These are questions of fact for the jury. *Id.*

The defendant argues that Dr. Drukteinis' testimony on whether his conduct was the product of a mental illness was inadmissible pursuant to

New Hampshire Rule of Evidence 702 because it "did not aid the jury in its search for the truth." He argues that this issue is "not outside the ken of an average juror" and involves "a moral component, an inquiry as to which psychiatrists . . . have no more expertise than jurors."

■ Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

> The test generally employed to determine the admissibility of opinion evidence is not to inquire whether the issue to which it relates is for the jury, nor whether it is a matter of daily occurrence and open to common observation, but whether the witness' knowledge of the matter in question will probably aid the triers in their search for the truth.

*Brown v. Cathay Island, Inc.*, 125 N.H. 112, 116 (1984) (quotations omitted); *see also State v. St. Laurent*, 138 N.H. 492, 495 (1994).

The defendant argues:

> Nothing about New Hampshire's jury-defined insanity standard gives the expert predominance in defining the characteristics of the link between mental illness and crime. Moreover, as trial counsel observed, [Dr.] Drukteinis used very basic factual considerations to draw his conclusion, including whether [the defendant] tried to hide the crime, whether he fled the scene, and whether, upon his arrest, he responded appropriately to questions posed by the police. Such issues are within the ken of the average juror.

(Citations omitted.)

■ The question for the trial court, however, is whether the proffered testimony will aid the jury. Dr. Drukteinis, as a psychiatrist, has a medical background and experience in treating mental illness. His medical opinion likely aided the jury to understand the complexities of mental illness and the multitude of behaviors likely to stem from mental illness. *Cf. Currier v. Grossman's*, 107 N.H. 159, 161 (1966) ("[I]n matters of common knowledge about which the jury know as much as a witness, an opinion cannot help them and therefore should not be introduced. This familiar principle is sound but inapplicable here, as it could reasonably be found by the Presiding Justice that the officer's testimony, due to his superior knowledge and the investigation he made, might aid the jury.").

■ While Dr. Drukteinis may have emphasized "very basic factual considerations" in stating his opinion, we do not believe this constitutes a valid basis upon which to exclude his testimony. "[E]xpert testimony is admissible if it will ... assist the trier of fact to understand the facts already in the record, even if all it does is put those facts in context." 4 J. MCLAUGHLIN, WEINSTEIN'S FEDERAL EVIDENCE § 702.03[1] (2007) (footnote omitted). Dr. Drukteinis testified at trial that he used his knowledge and background in psychiatry to offer an opinion upon

> whether the individual has a mental disorder and what is the diagnosis, and whether that disorder was present at the time of the behavior which is at issue, and then from all the facts and circumstances surrounding the case, ... whether that behavior was really the product of the mental disorder or alternative reasons.

Regardless of whether this issue includes a "moral component," a psychiatrist's expert opinion on this matter may be of aid to a jury.

The defendant cites our decision in *St. Laurent* in support of his argument. In *St. Laurent*, the defendant was charged with assault and pled not guilty by reason of insanity. *St. Laurent*, 138 N.H. at 493. At trial, the defendant attempted to introduce the testimony of an expert psychologist "on the ultimate issue of whether the defendant possessed the requisite *mens rea* for the crimes charged." *Id.* at 494. We concluded that such testimony "will not aid the jury in its search for truth" because "[t]he jury is capable of deciding the issue of intent without expert assistance." *Id.* at 495.

We disagree with the defendant, however, that *St. Laurent* is applicable to this case. The expert testimony to which the defendant objects in this case does not address the issue of intent, but rather the issue of whether the defendant's actions were the product of a mental illness. As we stated above, the complexities of mental illness are matters where expert testimony may "assist the trier of fact to understand the evidence or to determine a fact in issue." N.H. R. Ev. 702; *cf. State v. Gourlay*, 148 N.H. 75, 82 (2002) (distinguishing inadmissible expert testimony on intent from admissible expert testimony on "the defendant's mental and cognitive deficits, an area in which the jury would need assistance"). Moreover, as the court's instruction to the jury made clear, the jury, as the fact finder, was not bound by Dr. Drukteinis' opinion and was free to reject it.

The defendant cites cases from the United States Court of Appeals for the District of Columbia and the Maine Supreme Court, where expert testimony regarding the issue of whether the defendant's conduct was a product of a mental illness was held inadmissible. *See Washington v.*

*United States*, 390 F.2d 444, 455-56 (D.C. Cir. 1967); *State v. Durgin*, 311 A.2d 266, 267 (Me. 1973). Both jurisdictions at one point employed the *Durham* rule, *Durham v. United States*, 214 F.2d 862 (D.C. Cir. 1954), which is similar to New Hampshire's insanity doctrine, but ultimately abandoned the test. *See United States v. Brawner*, 471 F.2d 969, 973, 981 (D.C. Cir. 1972) (*en banc*) (superseded by statute); *State v. Flick*, 425 A.2d 167, 171 (Me. 1981). Under the *Durham* rule, the D.C. Circuit in *Washington* held that "[t]he term 'product' has no clinical significance for psychiatrists," and therefore their testimony is inadmissible. *Washington*, 390 F.2d at 456; *see also Durgin*, 311 A.2d at 268 ("[T]he expert should not give his opinion as to the cause of the conduct."). With due respect to those courts, we are not persuaded by their analyses and are not bound by their decisions. In addition, we note that the *Durham* rule, while similar to our approach regarding insanity, is not identical in its application. *See* Reid, *Understanding the New Hampshire Doctrine of Criminal Insanity*, 69 YALE L.J. 367, 390-93 (1960).

The defendant also argues that the admission of Dr. Drukteinis' testimony "rendered the trial fundamentally unfair, violating [his] right to due process under the New Hampshire Constitution." However, passing reference to due process, without more, is not a substitute for valid constitutional argument, and we therefore decline to address this argument. *Buchholz v. Waterville Estates Assoc.*, 156 N.H. 172, 177 (2007).

■ Accordingly, we can not say that the trial court engaged in an unsustainable exercise of discretion in admitting the testimony of Dr. Drukteinis on the issue of whether the defendant's actions were a product of a mental illness.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.