Carroll
No. 2010-812

ALFRED R. MARSHALL, JR. & a.

v.

JAMES J. BURKE, JR. & a.

Argued: June 16, 2011
Opinion Issued: October 12, 2011

*Cooper, Cargill & Chant, P.A.* of North Conway (*Randall F. Cooper* on the brief and orally) for the plaintiffs.

*Orr & Reno, P.A.* of Concord (*Jeremy D. Eggleton* on the brief and orally) for the defendants.

LYNN, J. The plaintiffs, Alfred and Susan Marshall, appeal an order of the Superior Court (*Houran,* J.) granting summary judgment in favor of the defendants[1] on the plaintiffs' claim to a prescriptive easement over defendants' beach front property (the "Beach Lot") on Lake Ossipee. We reverse and remand.

The summary judgment record reveals the following pertinent facts. The Beach Lot is located to the west of Lake Ossipee between the lake and Deer Cove Road. To the west of Deer Cove Road are the properties of the individual defendants. To the west of the lots of these defendants is Benson Road, and to the west of Benson Road is the plaintiffs' property.

The plaintiffs' and the defendants' lots were originally part of a parcel acquired by Francis H. Lord in 1871. Lord sold several beachfront lots (but not the Beach Lot) during his lifetime. After Lord's death, his heirs continued to sell parcels from his land, including several non-waterfront back lots. Title to the Beach Lot ultimately passed through Lord's heirs to the University of New Hampshire, which conveyed the Beach Lot to Charles Banfill in 1955. The Town of Ossipee (Town) acquired title to the Beach Lot by a tax collector's deed dated December 13, 1987. The Town conveyed the Beach Lot to Florence Banfill by quitclaim deed dated September 1, 1993. Banfill in turn conveyed the Beach Lot to the Deer Cove Shorefront Owners' Association (DCSOA). In 1998, DCSOA conveyed to

---

[1] The defendants are James J. Burke and Patricia M. Burke, Thomas E. Williams, G. Thomas Jensen and Beverly Ann Jensen, Joan C. Picard, and the Deer Cove Shorefront Owners Association.

each of the individual defendants that portion of the Beach Lot that is located across Deer Cove Road from his or her lot.

In June 2010, the plaintiffs filed this action seeking a court determination that they hold prescriptive rights to use Blanchard Road[2] and the Beach Lot. The plaintiffs claimed that, prior to the Town's acquisition of the Beach Lot by tax deed in 1987, they and their predecessors had made more than twenty years of open, adverse, continuous and uninterrupted use of the Beach Lot to access Lake Ossipee, thus giving them a prescriptive easement over that lot. The defendants challenged the plaintiffs' claim on five grounds, one being that any prescriptive easement to use the Beach Lot, which may have existed prior to 1987, was extinguished by the Town's acquisition of the property by tax deed in that year. The trial court agreed with the defendants on this point and therefore did not address their other arguments. Without deciding whether the plaintiffs actually had an easement prior to 1987, the court held that even assuming such easement existed, the tax deed cut off even ripened prescriptive rights as a matter of law. This appeal followed.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Big League Entm't v. Brox Indus.*, 149 N.H. 480, 482 (2003). If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

On appeal, the plaintiffs argue that the trial court erred in determining that our decision in *Burke v. Pierro*, 159 N.H. 504 (2009), compelled the conclusion that any easement the plaintiffs might have had prior to the tax deed was extinguished by that deed. The defendants dispute this, arguing that the trial court properly construed *Burke.* We agree with the plaintiffs.

In *Burke*, we considered a prescriptive easement claim made by different back lot owners (the Pierros) to the same Beach Lot involved in this case. Unlike the plaintiffs here, the Pierros did not claim that they had made adverse use of the Beach Lot for twenty years *before* the date the

---

[2] Blanchard Road runs from Benson Road to Deer Cove Road over the Burke lot (Lot 68) and provides plaintiffs' means of access to the Beach Lot. Although plaintiffs' suit claimed an easement to use Blanchard Road as well as the Beach Lot, the trial court's summary judgment order did not address the alleged Blanchard Road easement and therefore it is not before this court in the instant appeal.

Town acquired title to the lot.[3] Instead, they argued that the tax deed was invalid and therefore "was irrelevant to their asserted twenty years of uninterrupted beach usage . . . ." *Id.* at 512. We held that the Pierros' challenge to the tax sale was untimely because it was asserted more than ten years after the tax deed was recorded. *See* RSA 80:39 (2003). Because the Pierros' total claimed adverse use exceeded twenty years, even if the time during which the Beach Lot was owned by the Town was excluded, we were then required to decide the effect of the Town's ownership; that is, whether it merely interrupted the running of the adverse possession period, as we had held in *Kellison v. McIsaac*, 131 N.H. 675, 681 (1989), or whether it started that period running anew. We concluded that it had the latter effect, holding that "a municipality's title to land through tax foreclosure proceedings extinguishes the prescriptive period accumulated prior to a tax sale." *Burke*, 159 N.H. at 512.

■ The trial court recognized that *Burke* was distinguishable from this case in that it did not involve a claim to a ripened prescriptive easement that existed before the tax sale. The court also acknowledged that in *Gowen v. Swain*, 90 N.H. 383 (1939), we held that a tax sale did not divest an easement over property that had existed for at least thirty-five years prior to the tax sale. However, relying on language we quoted from an ALR Annotation that " 'the title conveyed by a [tax sale] is . . . a new and paramount title to the land in fee simple absolute, . . . free from all equities and encumbrances existing prior to the sale,' " *Burke*, 159 N.H. at 512-13 (quoting Annotation, *Quantum of Estate Acquired by Purchaser at Tax Sale of Property Which is Subject to Successive Estates or Different Interests*, 75 A.L.R. 416, 417 (1931)), the trial court found that "*Burke* is wholly inconsistent with *Gowen*" and "conclude[d], therefore, that *Gowen* ha[d] been overruled *sub silencio* . . . ." As additional support for this conclusion, the trial court noted that in adopting the majority *in rem* view of the effect of a tax sale, *Burke* cited approvingly the decision in *Harrison v. Everett*, 308 P.2d 216 (1957), a case in which the Colorado Supreme Court held that a tax deed extinguished even a ripened claim of title by adverse possession. *See Burke*, 159 N.H. at 514. We hold that *Burke* did not overrule *Gowen* and that a tax sale does not extinguish prescriptive easements that have ripened into vested property rights prior to recording of the tax deed.

■ Our opinion in *Burke* did not cite or reference *Gowen* in any way, and while, like the trial court, we acknowledge the reality that a case may

---

[3] To establish an easement by prescription, the claimant must prove, by a preponderance of the evidence, twenty years of adverse, continuous and uninterrupted use of the land. *See, e.g., Flanagan v. Prudhomme*, 138 N.H. 561, 571-72 (1994).

be overruled *sub silencio, see Central Virginia Community College v. Katz,* 546 U.S. 356, 382 (2006) (Thomas, J., dissenting), such a conclusion should not be reached except on inescapable grounds, as to do otherwise is inconsistent with settled principles of *stare decisis. See id.* at 363 (opinion for the Court by Stevens, J.) ("we are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated"); 20 AM. JUR. 2D, *Courts* § 134 (2005) ("a case is not binding precedent on a point of law where the holding is only implicit or assumed in the decision but is not announced"); *see also Agostini v. Felton,* 521 U.S. 203, 237 (1997) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." (quotation and brackets omitted)). The defendants argue that "[t]here is no reason why a tax sale should be an *in rem* proceeding that creates a virgin title when an adverse possession has not ripened, and an *in personam* proceeding that transfers only the title held by the person assessed when an adverse possession has ripened." We do not retreat from the view that tax sales are *in rem* proceedings in the sense that collection of the taxes due is limited to recovery from the property itself rather than from its owners, but assigning them this designation does not answer the question of what consequences flow from the designation. And while we acknowledge the existence of some tension between *Gowen's* holding and certain language in *Burke* describing a tax deed as creating a "new and paramount title,"[4] the two decisions are not fundamentally at odds. The important distinguishing feature between the cases is that *Gowen* dealt with a vested right, while *Burke* involved the mere possibility that continued adverse use for the remainder of the limitations period would ripen into a prescriptive easement. It is one thing to rule, as we did in *Burke,* that a tax sale extinguishes budding but as yet unripened prescriptive rights accruing prior to the tax sale, and quite another to hold, as we refused to do in *Gowen,* that a tax sale extinguishes prescriptive rights that already exist at the time the tax sale occurs.

The defendants next argue[5] that, even if *Burke* did not implicitly overrule *Gowen,* we should now do so explicitly. Relying on the factors we

---

[4] We observe that there is a similar tension between defendants' argument that a tax sale should be regarded as a purely *in rem* proceeding, on the one hand, and its support of the holding in *Buchholz v. Waterville Estates Assoc.,* 156 N.H. 172 (2007), that a tax sale does not extinguish condominium covenants, on the other. If by *"in rem* proceeding" defendants mean a proceeding that results in issuance of a tax deed that extinguishes *all* interests aside from the fee ownership of the tax sale purchaser, then our decision in *Buchholz* could not stand.

[5] In their brief, the defendants assert that the plaintiffs knew or should have known of prior proceedings (including the *Burke* case) involving the Beach Lot, did not join those proceed-

cited in *Kalil v. Town of Dummer Zoning Board of Adjustment*, 159 N.H. 725 (2010), for determining whether to overrule precedent, the defendants argue that these factors weigh in favor of overruling *Gowen*. The factors in question are whether: (1) the rule has proven to be intolerable simply in defying practical workability; (2) the rule is subject to a kind of reliance that would lend special hardship to the consequences of overruling; (3) related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification. *Kalil*, 159 N.H. at 731. We disagree that these factors warrant overruling *Gowen*.

■ Regarding the first factor, the defendants argue that sound public policy dictates overruling *Gowen* because it is impractical for tax assessors to ascertain the existence of prescriptive easements that have not been reduced to judgment and recorded in the land records. The short answer to this argument is that any such burden is more theoretical than real because, under *Gowen*, properties sold for taxes are sold subject to ripened prescriptive easements, and while assessors are *presumed* to take account of the impact of easements on the value of properties, the practical reality is that the actual burden of insuring that this occurs is placed on the property owner through the tax abatement process. *See Gowen*, 90 N.H. at 387; *see also* RSA 76:16, I (Supp. 2010) ("[s]electmen or assessors, *for good cause shown*, may abate any tax assessed" (emphasis added)); *Porter v. Town of Sanbornton*, 150 N.H. 363, 367 (2003) (taxpayer bears the burden of proof in abatement proceedings).

We recognize that, in addition to *Harrison*, a number of other courts which have adopted the *in rem* view of tax sales have relied on the rationale of facilitating the marketability of tax titles as the basis for holding that such sales extinguish not just accruing prescriptive claims but also ripened prescriptive rights. However, most of these cases, including *Harrison* itself, involved claims of a *fee interest* acquired by adverse possession rather than, as here, a claim to an appurtenant easement. *See Killion v. Meeks*, 777 N.E.2d 1007, 1011-12 (Ill. App. Ct. 2002); *Lippert v. Jung*, 783 A.2d 206, 219 (Md. 2001); *Overstreet v. City of Raleigh*, 330 S.E.2d 643, 645 (N.C. Ct. App. 1985); *Congregation Yetev Lev D'Satmar, Inc. v. County of Sullivan*, 452 N.E.2d 1207, 1212-13 (N.Y. 1983); *Leciejewski v. Sedlak*, 342 N.W.2d 734, 739 (Wisc. 1984). *But see Wolfson v. Heins*, 6 So.2d 858, 860-61 (Fla. 1942)

---

ings, and that the result of those proceedings "should have rendered the Appellees' titles to the Beach Lot unassailable." Because the trial court did not reach any of these issues and the defendants did not cross-appeal, we do not address these issues either and leave them for the trial court on remand.

(holding that tax sale extinguishes even recorded appurtenant easement); *Nedderman v. City of Des Moines*, 268 N.W. 36, 37-38 (Iowa 1936) (holding that tax sale extinguished recorded restrictive covenant).

██ ██ In the tax sale context, there is a crucial distinction between a claim to a fee interest and a claim to an appurtenant easement. In the case of a fee interest, the value of that interest to the holder — and the value subject to taxation — is reflected in the property itself. Accordingly, where one claiming entitlement to the benefit of that value through adverse possession has not paid the taxes due on the property, depending upon the facts, there may be no unfairness in holding that a sale of the property by the taxing authority extinguishes the interest. *See Congregation Yetev Lev D'Satmar, Inc.*, 452 N.E.2d at 1211 ("[s]tatutes taxing real property are universal and property owners [including those claiming ownership by adverse possession] are chargeable with knowledge that taxes will be levied against the property regularly and that a default may result in forfeiture of the land"). With an appurtenant prescriptive easement, however, the value of that interest is deemed to be reflected in the property that is benefitted by the easement (the dominant estate), and, conversely, the easement is regarded as diminishing the value to the servient estate (here the Beach Lot). Where the taxes have been paid on the dominant estate, it is at least unfair — and arguably would constitute a taking or deprivation of property without due process of law, *see Hayes v. Gibbs*, 169 P.2d 781, 786 (Utah 1946) — to the owner of the dominant estate to extinguish the easement simply because the taxes were not paid on the (reduced) value of the servient property. This is not only the precise reasoning we adopted in *Gowen, see Gowen,* 90 N.H. at 387-88, but also is the rationale which supports the majority view that a tax sale does not extinguish an appurtenant easement. *See Alvin v Johnson*, 63 N.W.2d 22, 26 (Minn. 1954) ("An easement which lies upon one lot but is appurtenant to another lot is really part of the latter. It is carved out of the former. So it would appear that, when the servient lot is sold for taxes not paid upon it, the easement ought not to pass to the purchaser; the lot should pass subject to the easement, or, to express it another way, the lot less the easement should pass." (quotation omitted)); RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 7.9, at 391 (2000) ("The majority of courts that have considered the question have concluded that tax-foreclosure sales do not result in extinguishment of some servitudes."); *accord Buchholz*, 156 N.H. at 175; *see also* Annotation, *Easement, Servitude, or Covenant as Affected by Sale for Taxes*, 7 A.L.R. 5TH 187 (1992); Annotation, *Easement or Servitude or Restrictive Covenant as Affected by Sale for Taxes*, 168 A.L.R. 529 (1947). And while it might be possible to distinguish between recorded and

unrecorded appurtenant easements, extending protection from tax sales only to the former, given our law's long history of recognizing unrecorded prescriptive easements as a valid property right, we agree with the Minnesota Supreme Court that "the arguments which support survival of a recorded easement from a tax deed are equally weighty and pertinent when considering the survival of an easement by prescription." *Alvin*, 63 N.W.2d at 28; *see also Helle v. Markotan*, 137 N.E.2d 715 (Ohio Com. Pl. 1955) (holding that tax sale did not extinguish pre-existing easement by implication).

The defendants next argue that there are no significant reliance interests that would be adversely affected by overruling *Gowen*. Again, we disagree. While it is true that if we limited such a ruling strictly to unrecorded easements, such as the prescriptive easement at issue here, the decision would cast no doubt on the validity of recorded easements or restrictive covenants such as those at issue in *Buchholz*, even such a narrow decision would upset settled expectations of property rights under existing New Hampshire law. Under the holding of *Gowen*, it has been the law of this state for more than seventy years that property owners holding a ripened prescriptive easement appurtenant do not lose this property right when the servient estate is sold for taxes. Based on this holding, it is reasonable to assume that such property owners have felt no particular need to pay attention to the tax status of adjoining or neighborhood properties burdened by the easements from which their properties benefit. If a decision overruling *Gowen* were applied retroactively, there would be a real risk that some owners who relied on the protection offered by that case would find themselves deprived of their property — a prospect that would raise obvious constitutional concerns. *Cf. Crespo v. McCullough*, 2008 WL 4767060, at *10-14 (Tenn. Ct. App. Oct. 29, 2008) (holding that due process would be violated by applying a Tennessee Supreme Court decision that effectively overruled prior precedent retroactively where to do so would extinguish plaintiffs' vested rights); *Opinion of the Justices*, 131 N.H. 645, 651 (1989) (declining to apply decision in *White v. Wolfeboro*, 131 N.H. 1 (1988) retroactively where it "upset customary tax sale practices," "was not foreshadowed clearly by any cases which came before it," and "inequities would result . . . [to p]roperty owners, whose titles contain a tax deed and who previously had believed their titles to be marketable and unencumbered, [but] now face unmarketable and clouded titles"). But even if *Gowen* were overruled only prospectively, the result would still require fundamental change in the behavior of property owners and would create the potential for widespread hardship for those unable to or unaware of the need to adjust to such change. *See Hayes*, 169 P.2d at 788 (rejecting

argument that efficiency of tax collection process required that easements be extinguished by tax sale because "[t]o follow such a theory would create a great insecurity of titles by placing unreasonable burdens upon landowners by putting them in the precarious position of seeing that . . . their . . . neighbors are properly assessed and their taxes paid, in order to protect their property from the loss of [appurtenant easements]").

The defendants contend that the third and fourth *Kalil* factors also warrant overruling *Gowen*. Specifically, they argue that Gowen "reflects an era when tax titles in American jurisdictions were generally more vulnerable to challenge, and [that] the modern trend in both statutory and case law is to make tax titles less contestable." In response to this argument, we note first that, with respect to statutory law, the defendants have not brought to our attention any substantive changes in the New Hampshire statutory scheme regarding property taxation since *Gowen* was decided that would warrant our revisiting the holding of that case. More importantly, while we are fully cognizant of the strong public interest in insuring the ready marketability of tax titles, we have been made aware of no information suggesting that, in the seventy plus years *Gowen* has been the law, the survivability of ripened prescriptive easements following a tax sale has proved to be an impediment to New Hampshire municipalities in the collection of property taxes. Indeed, if *Gowen* were a significant problem in this regard, we expect the legislature would long ago have taken action to remedy the situation, and, subject to constitutional limitations, it retains the ability to do so if it disagrees with today's decision.

Finally, the defendants attempt to distinguish *Gowen* on the grounds that the prescriptive easement in *Gowen* was "open and obvious" (as evidenced by wheel tracks leading over the servient property and gaps in the stone walls at either end of the property), whereas the easement claimed by the plaintiffs is not. Although the defendants have accurately described the easement as recited in *Gowen*, the problem with this argument is that there is no indication in the opinion that the open and obvious character of the easement played any role in the court's decision. Rather, as noted previously, the court simply *presumed* that tax assessors take account of easements, and then observed that if this assumption was incorrect, the remedy lay in an abatement proceeding. *Gowen*, 90 N.H. at 387.

For the reasons stated above, the superior court's order granting summary judgment in favor of the defendants is reversed and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

DALIANIS, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.