NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2016-0398


DANIEL BARRY

v.

NEW HAMPSHIRE DEPARTMENT OF HEALTH AND HUMAN SERVICES & a.

Argued: May 18, 2017
Opinion Issued: September 28, 2017


Law Office of Leslie H. Johnson, PLLC, of Center Sandwich (Leslie H. Johnson on the brief), and Purcell Law Office, PLLC, of Portsmouth (Ellen Purcell on the brief and orally), for the plaintiff.


Joseph A. Foster, attorney general (Kenneth A. Sansone, assistant attorney general, and Lynmarie C. Cusack, senior assistant attorney general, on the brief, and Mr. Sansone orally), for the defendants.


Douglas, Leonard & Garvey, P.C., of Concord (Megan Douglass on the brief), for the New Hampshire Chapter of the National Employment Lawyers Association, as amicus curiae.

BASSETT, J. The plaintiff, Daniel Barry, appeals a jury verdict in favor of the defendants — the New Hampshire Department of Health and Human Services (department) and William Fenniman, Jr., the director of the Division of Juvenile Justice Services during the relevant time period. The plaintiff worked as a youth counselor at the Sununu Youth Services Center (SYSC) until the defendants terminated him, claiming that he had used excessive force against a youth resident and had failed to file a report regarding the incident. After the Personnel Appeals Board (PAB) reinstated him, the plaintiff filed the present action, alleging a claim for wrongful termination against the department, and a claim for interference with the plaintiff's right to freedom of expression under RSA chapter 98-E against the department and Fenniman in his official and individual capacities.

On appeal, the plaintiff argues that the Superior Court (Schulman, J.) erred when it: (1) declined to give collateral estoppel effect to the PAB's findings that the plaintiff had not used unreasonable or excessive force against the resident or violated SYSC policies; and (2) allowed the defendants' expert to testify regarding the reasonableness of the plaintiff's use of force. The defendants cross-appeal, arguing that the Superior Court (Brown, J.) erred when it: (1) concluded that an employee protected by state personnel laws and a collective bargaining agreement could bring a claim for wrongful termination; and (2) declined to make factual findings to resolve the defendants' motion to dismiss upon the ground of sovereign immunity. We affirm the trial court's rulings with respect to the issues raised by the plaintiff in his appeal. As a result, we do not address the issues raised in the defendants' cross-appeal.

The jury could have found the following facts. On August 7, 2010, while the plaintiff was on duty at the SYSC, one of the residents became upset at a SYSC staff member. The confrontation between the resident and SYSC employees escalated as the resident grew angrier. The plaintiff intervened, handcuffing the resident, removing him from his room, and, ultimately, restraining him on the ground. The plaintiff claimed that he restrained the resident to prevent him from spitting on staff, and asserted that he maintained the restraint for several minutes because the resident was threatening to harm himself by "smash[ing] his head" against the floor.

An internal investigation of the incident followed, after which Fenniman recommended that the plaintiff be terminated. Thereafter, the plaintiff was terminated. The defendants offered two justifications for the termination: first, the plaintiff's restraint of the resident constituted an excessive use of force; and second, the plaintiff failed to file a report regarding the incident, in violation of SYSC policy.

The plaintiff appealed his termination to the PAB. The PAB concluded that termination was "unwarranted" and "unjust" in light of the facts in evidence. Specifically, the PAB found that the plaintiff had not "use[d]

2

excessive and unreasonable force for the conditions existing at the time" he restrained the resident, and it determined that, although the plaintiff "did not file a report of the restraint, he ensured that such a report was completed and submitted as required." The PAB ordered that the plaintiff be reinstated with back pay, and the plaintiff returned to his employment.

The plaintiff subsequently brought the present action, alleging that the defendants' real motivation was to retaliate against the plaintiff for engaging in union activity and speaking out against various policies and initiatives promoted by Fenniman. After trial, the jury returned a verdict in favor of the defendants. On appeal, the plaintiff argues that the trial court erred when it: (1) declined to give collateral estoppel effect to the PAB's findings; and (2) allowed the defendants' use-of-force expert to testify.

We first address the plaintiff's argument that the trial court erred when it failed to give collateral estoppel effect to the PAB's findings. Collateral estoppel may preclude the relitigation of findings by an administrative board, provided that the following requirements are satisfied: (1) the issue subject to estoppel must be identical in each action; (2) the first action must have resolved the issue finally on the merits; (3) the party to be estopped must have appeared in the first action or have been in privity with someone who did; (4) the party to be estopped must have had a full and fair opportunity to litigate the issue; and (5) the finding must have been essential to the first judgment. Farm Family Mut. Ins. Co. v. Peck, 143 N.H. 603, 605 (1999). "The applicability of collateral estoppel is a question of law that we review de novo." Tyler v. Hannaford Bros., 161 N.H. 242, 246 (2010). The party asserting estoppel bears the burden of proving that it applies. Appeal of Wingate, 149 N.H. 12, 16 (2002).

In the trial court, the plaintiff argued that, given the PAB's findings, the defendants were precluded from offering evidence that the plaintiff's use of force was unreasonable or excessive, or that he had violated the policy requiring staff to report incidents involving the use of force. The trial court denied the motion, concluding that collateral estoppel did not apply because the issues in the two proceedings were not identical. On appeal, the defendants argue that the trial court's ruling may be sustained on a different ground — that, in light of the substantial procedural differences between the PAB proceeding and the present civil action, it would be unfair and inequitable to apply collateral estoppel. We agree with the defendants. See Slater v. Planning Board of Town of Rumney, 121 N.H. 212, 216 (1981) (we will sustain a decision of a tribunal if there are valid alternate grounds to support it).

Collateral estoppel serves the dual purposes of "promoting judicial economy and preventing inconsistent judgments." Bruzga's Case, 142 N.H. 743, 745 (1998) (quotation omitted). We have recognized that collateral estoppel should not be mechanically applied. Id. "Rather, it should be employed with reason, equity, and fundamental fairness as ultimate goals." Id.

Thus, when countervailing policy and equitable considerations outweigh the policies supporting collateral estoppel, we have declined to apply the doctrine. See, e.g., In re Zachary G., 159 N.H. 146, 152 (2009) (declining, in light of the potential adverse impact on the public interest, to apply collateral estoppel in termination of parental rights proceeding); State v. Cassady, 140 N.H. 46, 49 (1995) (declining to give collateral estoppel effect to findings of administrative license suspension hearing in subsequent criminal proceeding).

This approach is consonant with Section 28 of the Restatement (Second) of Judgments, see Restatement (Second) of Judgments § 28, at 273-74 (1982), which notes that collateral estoppel should not apply when "[a] new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts," id. § 28(3), at 273. As observed in the comments to Section 28, "the procedures available in the first court may have been tailored to the prompt, inexpensive determination of small claims and thus may be wholly inappropriate to the determination of the same issues when presented in the context of a much larger claim." Id. § 28 cmt. d at 279.

We conclude that, given the substantial differences in the nature and extent of the procedures followed in the PAB proceeding and the present civil action, collateral estoppel does not apply. The PAB is tasked with hearing and deciding appeals arising out of the application of the personnel rules, including termination decisions. See RSA 21-I:46, I (2012); RSA 21-I:58, I (2012); N.H. Admin. R., Per-A 207.12(b). It reviews a termination decision to determine whether it is: (1) unlawful; (2) in violation of the personnel rules; (3) unwarranted in light of the facts in evidence; or (4) unjust in light of the facts in evidence. N.H. Admin. R., Per-A 207.12(b)(1)-(4). It may also reverse a termination decision if it finds that the employee was terminated "for any reason related to politics, religion, age, sex, race, color, ethnic background, marital status, or disabling condition, or on account of the person's sexual orientation." RSA 21-I:58, I.

The remedies available in PAB proceedings are reinstatement and back pay, less "any amount of compensation earned or benefits received from any other source during the period." Id. By contrast, traditional tort remedies are available in a civil action for wrongful termination, including damages for emotional distress. Porter v. City of Manchester, 151 N.H. 30, 43-44 (2004). In addition, a public employee who prevails in an action brought under RSA chapter 98-E may recover attorney's fees. See RSA 98-E:4, II (2013).

Just as there are significant limitations on the scope of the issues and remedies available in PAB proceedings, the procedures in PAB proceedings are limited so as to promote the prompt resolution of disciplinary appeals. Hearings on the merits are limited to one hour, with each party allotted 30 minutes in which to present its evidence. N.H. Admin. R., Per-A 206.12(f); see

4

also N.H. Admin. R., Per-A 206.12(i) (providing that PAB may allow special scheduling of hearings in excess of allotted time only if it "concludes that to do so is necessary to assist in resolving the case fairly").  Moreover, in PAB proceedings there are strict limitations on discovery.  The PAB may not grant a request for formal discovery unless the party establishes that "he or she would be unable to sustain his or her burden . . . or establish his or her specific defense to a relevant allegation without the additional formal discovery identified; and . . . there exist exceptional circumstances beyond the control of the party, such as the unavailability of a witness."  N.H. Admin. R., Per-A 206.09(f)(2)(a)-(b).  In contrast, parties to civil proceedings may generally "obtain discovery regarding any matter . . . that is relevant to the subject matter involved in the pending action," Super. Ct. Civ. R. 21(b).

Two other material differences are important to note: First, unlike in a civil action, the rules of evidence do not apply in PAB proceedings.  See RSA 541-A:33, II (2007); N.H. Admin. R., Per-A 207.04(a); see also N.H. R. Ev. 1101(a).  Second, in termination appeals, although the employee bears the burden of persuasion, N.H. Admin. R., Per-A 207.12(b), the employer bears a burden of "producing evidence supporting the action under appeal."  N.H. Admin. R., Per-A 207.01(b); see also 2 G. Dix et al., McCormick on Evidence § 337, at 646-47 (7th ed. 2013) ("In most cases, the party who has the burden of pleading a fact will have the burdens of producing evidence and of persuading the jury of its existence as well.").

Taken together, the differences between the procedures in PAB proceedings and those in a civil action weigh against the application of collateral estoppel.  A proceeding before the PAB is designed to provide an informal and prompt resolution to a dispute over discipline.  If we were to hold that the plaintiff could invoke collateral estoppel in this case, parties in disciplinary appeals would have little choice but to exhaustively litigate every issue to prevent the adverse application of collateral estoppel in a subsequent civil proceeding.  Such an outcome would undermine the very purpose of the summary PAB proceeding, which is to provide an informal and expeditious review of disciplinary decisions.  See Cassady, 140 N.H. at 49 (declining to give collateral estoppel effect to findings in administrative license suspension proceeding).  Further, the procedural differences described above, as well as the shifted allocation of the burden of production, counsel against applying collateral estoppel in a subsequent civil action, where defendants have exposure to a wide array of damages in tort and contract.  Cf. Restatement (Second) of Judgments, supra § 28(4), at 273 (stating that collateral estoppel does not apply where "[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action [or] the burden has shifted to his adversary").

5

Notably, application of collateral estoppel in this case would not have promoted judicial economy: even if the prior PAB proceeding were to have conclusively established that the plaintiff did not, in fact, use excessive force or violate SYSC policies, the resolution of that fact would not have prevented the defendants from litigating the separate issue of their motivation for terminating the plaintiff.  See Robertson's Case, 137 N.H. 113, 117 (1993) (distinguishing, for purposes of collateral estoppel, between the issue of whether defense attorneys had committed discovery misconduct, and the issue of what the complainant "knew or reasonably believed about [the] alleged discovery misconduct").  In short, even if collateral estoppel were held to preclude the defendants from contesting the PAB findings that the plaintiff did not actually use excessive force or fail to file a report, the defendants would nonetheless be entitled to offer proof that they believed he did these things and to prove the reasonableness of such beliefs.  Thus, application of collateral estoppel would not have significantly narrowed the issues or limited the presentation of evidence at trial.

Accordingly, we conclude that the trial court did not err when it declined to give collateral estoppel effect to the findings of the PAB.  In reaching this conclusion, we note that courts in other jurisdictions have declined to apply collateral estoppel in similar circumstances.  See, e.g., Rue v. K-Mart Corp., 713 A.2d 82, 86 (Pa. 1998) (declining to apply collateral estoppel where there existed "substantial procedural and economic disparities between unemployment compensation proceedings and later civil proceedings"); Vest v. Bd. of Educ. of Cty. of Nicholas, 455 S.E.2d 781, 786-87 (W. Va. 1995) (declining to give collateral estoppel effect to findings of teacher grievance board in subsequent civil action).

The plaintiff next argues that the trial court erred when it permitted the defendants' expert to testify that the plaintiff used excessive force and violated SYSC policies.  The plaintiff asserts that: (1) the testimony was not helpful to the jury, because the question of whether the plaintiff had, in fact, used excessive force and violated policies was not at issue; and (2) the expert usurped the jury's role by giving an opinion regarding the defendants' motivation for terminating the plaintiff's employment.

The decision to admit expert testimony rests, in the first instance, within the sound discretion of the trial court.  State v. Gay, 169 N.H. 232, 249 (2016).  We reverse its determination only if the appealing party can demonstrate that the ruling was untenable or unreasonable and that the error prejudiced the party's case.  Id. at 250.  In this case, we cannot conclude that the trial court's ruling was untenable or unreasonable.

Rule 702 provides that a qualified expert may offer his opinion if the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.  See N.H. R. Ev. 702.

6

In other words, the question is "whether the witness' knowledge of the matter . . . will probably aid the triers [of fact] in their search for the truth." State v. Labranche, 156 N.H. 740, 743 (2008) (quotation omitted).

Here, the testimony offered by the defendants' expert satisfied this standard. At trial, the parties and the trial court framed the issue as whether the defendants terminated the plaintiff to retaliate against him for his criticism of Fenniman's policies and initiatives. The defendants' true motivation for terminating the plaintiff could be proven either through direct evidence or through circumstantial evidence, which could include evidence that the defendants' proffered reasons for the termination were not credible, see Cloutier v. A. & P. Tea Co., Inc., 121 N.H. 915, 921-23 (1981) (analyzing evidence offered by the plaintiff in support of wrongful termination claim). We agree with the trial court that, under these circumstances, evidence tending to show that the plaintiff's use of force was excessive would be probative of whether the defendants' proffered reasons for the termination were credible, which, in turn, would be relevant to the ultimate issue of the defendants' motivation.

In analogous circumstances, courts in other jurisdictions have permitted expert testimony that tends to show that the employer's reason for a particular employment decision was pretextual. See, e.g., Hartley v. Dillard's, Inc., 310 F.3d 1054, 1060-61 (8th Cir. 2002) (expert testimony on economic difficulties affecting mall stores); Siring v. Oregon State Bd. of Higher Educ., 927 F. Supp. 2d 1069, 1078-79 (D. Or. 2013) (expert testimony on employer's departure from customary standards for tenure evaluation); Gipson v. Wells Fargo Bank N.A., 460 F. Supp. 2d 9, 10-11 (D.D.C. 2006) (expert testimony on common and accepted practices in mortgage loan industry). Like the testimony of many of the plaintiff's witnesses, who testified that the plaintiff's use of force was reasonable, the opinion of the defendants' expert was admitted to assist the jury in evaluating the credibility of the proffered reasons for the plaintiff's termination. We cannot conclude that the trial court erred in determining that this expert testimony would be helpful to the jury in its search for the truth. Labranche, 156 N.H. at 743.

Nor are we persuaded by the plaintiff's second argument — that the defendants' expert usurped the jury's role by offering an opinion on the defendants' subjective motivation for terminating the plaintiff. Contrary to the plaintiff's assertion, the expert did not opine on the defendants' subjective motivation for terminating the plaintiff; rather, the expert opined that the plaintiff's use of force was excessive and inappropriate, and that the plaintiff had violated SYSC policies. The factual premise underlying the plaintiff's argument is at odds with the record; accordingly, we reject the plaintiff's argument.

7

Finally, to the extent that the plaintiff argues that the expert testimony was inadmissible, because it led to confusion of the issues, see N.H. R. Ev. 403, that issue was neither raised in the plaintiff's notice of appeal, nor fully briefed. Therefore, we decline to address it. See State v. Blackmer, 149 N.H. 47, 49 (2003).

For the foregoing reasons, we are not persuaded by the plaintiff's arguments that the trial court erred.

Affirmed.

HICKS and LYNN, JJ., and MANGONES, J., superior court justice, specially assigned under RSA 490:3, concurred.